JOSEPHINE MCLEAN, *Administratrix, &c.*

*v.*

J. C. BURBANK *et al.*

1. The propriety of a refusal to grant a continuance on the ground that the affidavit therefor did not show that the testimony of the absent witness was material, together with the materiality of the proposed testimony, considered and determined.

2. The latter clause of *section* 218, *page* 480, *Gen'l Stat.*, which provides that the court "in all cases may instruct them (the jury) if they render a general verdict, to find upon particular questions of fact to be stated in writing, and may direct a written finding thereon," intrusts the power so to instruct to the *discretion* of the court. The exercise of such discretion will not be disturbed here, unless it is manifest that injustice has resulted from an abuse of discretion.

3. Construction of pleading.

This case has been before the Supreme Court, upon an appeal from an order granting a new trial, which order was affirmed. The case is fully reported in 11 *Minn.*, 277. A new trial was had in the District Court for Washington county, and result-

ed in a verdict for the plaintiff. The defendants now appeal from an order refusing to grant a new trial. The new points raised by this second appeal are fully stated in the opinion of the court.

Lorenzo Allis, for Appellants.

Brisbin & Warner, for Respondent.

*By the Court*—Berry, J. In this action an appeal was once before taken to this Court, and the case is reported in 11 *Minn.*, 277. In accordance with the decision there found, a new trial was had below, which resulted in a verdict for the plaintiff. Thereupon a motion was made for a new trial, from the order denying which the defendants have taken the present appeal.

It will be unnecessary to recapitulate the facts developed on the trial, as they are substantially the same as are reported in the volume above cited.

I. The counsel for the appellants urges first, that the Court below "erred in refusing a continuance for an absent witness." The affidavit used in support of the motion for the continuance reads as follows :

"John L. Merriam being duly sworn says, that he is one of the defendants in the above entitled action; that William Roe is a material witness on behalf of defendants, without whose testimony defendants cannot safely go to trial; that deponent believes said witness, if present and examined in court, would testify as follows, to wit:

I was in the employ of Burbank & Co. in March, 1863; was present when the accident occurred when McLean lost his life; had been in employ of Burbank & Co. little over a year; have been a driver over seven years last November.

That has been my business; my route at that time was from Hastings to Saint Paul; we started down from the house, (Mr. White and me;) Mr. White then told me to stop and he would show me the way; there were several large stones in the way; I then drove down to the boat and stopped, and the ferryman told me to come on; when the fore wheels struck the boat it gave way a little, and when the hind wheels struck it, it pushed off from the ¡shore, and when it got into deep water it uncoupled. I could see perfectly well to drive on; the horses did not back; I kept the horses up, thinking that it would hold the coach; I then saw the ferryman take hold of one of the horses and back him a little, so as not to crowd the leaders; I felt the coupling give way, and threw my lines over the wheel horses, and I went into the water with the body of the coach. The upper rope around the rock gave way; I swam in the water and heard men struggling; I tried to get hold of the door knob and couldn't; I caught hold of one gentleman and pulled him on to the coach; then another came out, and I had hold of one gentleman and held on to him, and in doing so turned over the coach; I then got him out, and he then got on the top of the coach; I then struck for the shore. The ferry boat then came down; I asked the ferryman to cut the rope and come down to help me; he was excited, I suppose, and did not answer; I think if he had cut the rope at that time it would have swung round near the coach; the ferryman was on the boat alone; the boy was on the shore; when I drove down I stopped about thirty yards from the ferry, and Mr. White got off and went ahead, and I stopped again until I was told to go on by the ferryman." The balance of the affidavit relates to the efforts made to procure the attendance of the witness, and to the inability of the defendants to prove the facts above stated by any other person.

The court below held that the affidavit showed sufficient diligence in endeavoring to procure the attendance of Roe, but that the testimony which it was claimed that he would give was not material, and on this ground the continuance was refused.

The appellants insist that they "are not liable in any event, unless the act or omission complained of was *wrongful;* and this testimony bore directly upon that issue, to wit, whether the act or omission complained of was or was not wrongful." *Sec.* 3, *Chap.* 68, *Pub. Stat.*, under which this action is brought provides that, "when the death of one is caused by the wrongful act or omission of another, the personal representatives of the former may maintain an action against the latter, if the former might have maintained an action, had he lived, against the latter, for an injury caused by the same act or omission." The natural construction of this language would appear to be, that the representatives may maintain their action for the same kind of act or omission, causing death, for which the intestate might have maintained an action had the resulting injury fallen short of death.

In the case at bar, any act or omission violative of the obligations which the appellants, as common carriers of passengers, assumed towards the intestate, would be a wrongful act or omission within the meaning of the statute. The word wrongful is not used in the sense of wilful or malicious. Now in the order of the trial, the testimony of Roe, had he been called as a witness by the defendants, would have been introduced after the plaintiff had closed her case. It appears that at the outset of the trial, the defendants admitted that the plaintiff was duly authorized and qualified to bring this action, that the defendants were partners as J. C. Burbank & Co., and that the plaintiff's intestate bought and paid for a ticket from Reed's Landing to St. Paul at the time stated in the

complaint. By reference to the testimony, it will be seen that at the close of the plaintiff's case, it appeared that the defendants were carriers of passengers, that the plaintiff's intestate took passage on defendants' stage from Reed's Landing to St. Paul, that at Hastings on the way to St. Paul, while the coach was being driven upon the ferry boat which crosses the Mississippi river at that point, as the hind wheels struck the boat, it swung out from the shore, the body of the coach was uncoupled from the fore wheels and was precipitated into the river, and that the intestate, being at the time inside the coach, was drowned.

It further appeared that the ferry at which the accident occurred was on and constituted part of the route taken by the defendants in this instance, that there was another route from Hastings to St. Paul not by this ferry, that the contract between the defendants and the intestate was for the entire route from one terminus to the other, that there was no notice of the intervention of any other carrier than the defendants.

At the close of the defendants' testimony, including the testimony proposed in the affidavit for the continuance, nothing would have appeared to the contrary. Nor would it have appeared from any quarter, that notice was given to the intestate that the passage of the river was attended with more than ordinary danger, or that it required special care or caution on the part of passengers. In 11 *Minn.* 288, in reference to this action, this Court made use of the following language : "The law imposes upon the common carrier of passengers, the greatest care and foresight for the safety of his passengers, and holds him liable for the slightest neglect. This duty and responsibility exist, not only in respect to the vehicle, but to every means and instrument used or embraced by the carrier in the transportation, and extends throughout the entire journey. This embraces the duty of giving

notice to the passengers, of places in the road, the passage
of which is attended with more than ordinary danger, or
requires special care or caution on the part of passengers,
and the neglect of the carrier to give the notice, will render
him liable in case of injury." We further held on page 291,
that under the state of facts above referred to, "as to the pas-
sengers, the ferry company are the employees and agents of
the defendants, and the latter are responsible for the acts of
the ferryman or ferry company, as for any other of their em-
ployees or agents." And on page 287, we further held, that
under the circumstances of this case as developed on the trial,
"proof that the plaintiff's intestate was a passenger of the
defendants, and that the accident occasioned the death, de-
volves upon the defendants the burden of exonerating them-
selves, by proof of diligence." Now in view of the evidence
which we have recapitulated, and of the law as we lay it
down, what is there in the proposed testimony of Roe, as dis-
closed in the affidavit of Merriam, that tends "to exonerate"
the defendants "by proof of diligence?" What is there that
tends to excuse the swinging off of the boat, the precipitation
of the coach into the river, and the drowning of the intestate?
What is there that tends to show that the act or omission
which produced this fatal result was not wrongful?

The care exercised in driving before the boat was reached,
or the truly heroic exertions of the driver to save the lives of
the passengers after the precipitation into the water, are cer-
tainly for these purposes ineffectual. Equally so is that por-
tion of the testimony of Roe in which the acts and omissions
of the ferryman are spoken of, because the defendants were
liable for his conduct, as for that of the driver himself. There
is nothing tending to show that the death was caused by the
wilful act of any employee of the defendants, acting out of the
course of his employment, nor by any third person for whose

acts the defendants were not responsible, nor by any uncontrollable physical force which the defendants could not be expected to foresee or provide against. We think that the Judge below was right in holding the proposed evidence immaterial, and that the continuance was properly refused on that ground. We think further that an examination of all the testimony in the case will show that there was no dispute as to the facts in regard to which Roe was expected to testify, and that there was nothing substantial in the proposed testimony which did not come from some other witness uncontradicted.

Indeed we are of opinion that the testimony of Roe was valuable only to the plaintiff. The counsel for defendants urges that to hold the testimony of Roe immaterial, is to hold all the testimony introduced by them immaterial. This would seem to be the precise estimate placed upon it by the jury.

II. The case shows that the counsel for the defendants requested the Court to instruct the jury, that in addition to rendering a general verdict, they should find upon certain questions of fact which were specified. To the refusal of the Court to comply with this request, exception was taken and this refusal is the second error assigned by the defendants. *Sec.* 218, *page* 480, *Gen. Stat.*, provides, that the Court "in all cases may instruct them (the jury), if they render a general verdict, to find upon particular questions of fact to be stated in writing, and may direct a written finding thereon." The counsel for the defendants submit that this provision of statute "confers the *power*, not the *discretion*, on the Court so to instruct the jury." We think otherwise. By the *terms* of the statute the power so to instruct the jury is intrusted to the *discretion* of the District Court, and, as in other cases, the exercise of such discretion will not be disturbed here, unless it is manifest that injustice has resulted from an abuse of discretion.

We perceive nothing of the kind in this case, nor are we able to see what possible advantage the defendants could have derived from answers to the particular questions proposed, in connection with a general verdict.

The appellants further contend, that "the Court erred in refusing certain instructions asked by defendants, and in giving certain instructions asked by the plaintiff." The counsel for the appellants, conceding that the refusals and instructions were in accordance with the views expressed by this Court when this case was before us on a former occasion, and reported in 11 *Minn.* 277, proposed to reargue the questions there decided, but we declined to hear him, adhering to the doctrines then announced.

As a fourth and last error, the appellants insist that the instructions are "erroneous in view of the pleadings. The complaint expressly charges that the act which caused the death of the plaintiff's intestate, was the act of the defendants, and their agents and servants who had the charge and control of said coach. * * * Under an issue thus made, it is insisted, that even if the ferryman be regarded as the servant or agent of the defendants, the latter cannot be held liable for his acts or omissions in the premises." The complaint alleges that "said *defendants*, and their said agents and *servants* who had the charge and control of said coach, of their own gross carelessness, negligence and misconduct, * * drove and allowed said coach to be driven out of the highway and usual road, and *suffered* the same, through like gross negligence and want of care, to run into and become submerged in the Mississippi River." The words which we italicise are, we think, sufficient to include the ferry company, and the ferryman, and their acts and omissions. Under the facts of this case as remarked in our former opinion on *page* 291, 11 *Minn.*, "as to the passen-

gers, the ferry company are the employees and agents of the defendants, and the latter are responsible for the acts of the ferryman and ferry company, as for any other of their employees or agents." The ferryman whose duty it was to transport the coach safely across the river, who as appears on all hands directed the driver to drive on the boat, and who took hold of the horses, must certainly be regarded as having, to some extent at least, "the charge and control of the coach."

This disposes of all the points made by the appellants, and the result is that the order appealed from is affirmed.