ANON ALFSON, as Administrator of the Estate of ANDERS TOBIASEN, Deceased, Respondent, v. THE BUSH COMPANY, LIMITED, Appellant.

ACTION FOR CAUSING DEATH BY NEGLIGENCE — CODE CIV. PRO. § 1902 — MAY BE MAINTAINED ALTHOUGH WIDOW AND NEXT OF KIN ARE NON-RESIDENT ALIENS. Under section 1902 of the Code of Civil Procedure, the administrator of a decedent, whose death was caused by the negligent act of a corporation, may maintain an action against the corporation to recover damages for decedent's · death, notwithstanding his widow and next of kin, for whose benefit the action is brought, are non-resident aliens, since the statute contains no words of limitation and no expression of the legislative will that the recovery therein authorized shall be distributed to residents only, and there is no valid reason why damages imposed upon a negligent employer as compensation to those who suffer by his act should not be paid to the survivors, whether residing here or in some foreign jurisdiction.

*Alfson* v. *Bush Co.*, 97 App. Div. 632, affirmed.

(Argued June 15, 1905; decided October 3, 1905.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered August 4, 1904, affirming a judgment in favor of plaintiff entered upon a verdict and an order denying a motion for a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Ernest F. Eidlitz* and *Frederick Hulse* for appellant. The widow and next of kin being non-resident aliens, this action cannot be maintained for their benefit. (*C., C., C. & St. L. Ry. Co.* v. *Osgood*, 70 N. E. Rep. 839; *Deni* v. *P. Ry. Co.*, 181 Penn. St. 525; *McMillan* v. *S. L., etc., Co.*, 91 N. W. Rep. 979; *Adam* v. *British, etc., Co.*, L. R. [2 Q. B. D. 1898] 430; *Brannigan* v. *U. G. M. Co.*, 93 Fed. Rep. 164.)

*Carlisle J. Gleason, Abram I. Elkus* and *Adolph Ruger* for respondent. An action for causing death is maintainable under section 1902 of the Code of Civil Procedure where the next of kin are non-resident aliens. (*Lanas* v. *M. G. Co.*, 88 App. Div. 251; *Mulhall* v. *Fallon*, 176 Mass. 266; *Vetaloro* v. *Perkins*, 101 Fed. Rep. 393; *K. C. Co.* v. *Petraytio*, 195 Ill. 215; *Luke* v. *Calhoun County*, 52 Ala. 115; *Bouthron* v. *Phœnix Co.*, 71 Pac. Rep. 941; *Davidson* v. *Hill*, L. R. [2 K. B. D. 1901] 606; *Dennick* v. *C. R. R. Co.*, 103 U. S. 439.)

BARTLETT, J. The plaintiff, as administrator of the deceased, brings this action under section 1902 of the Code of Civil Procedure to recover damages of the defendant corporation for negligently causing the death of the intestate. This section reads as follows: " The executor or administrator of a decedent, who has left, him or her surviving, a husband, wife, or next of kin, may maintain an action to recover damages for a wrongful act, neglect, or default, by which the decedent's death was caused, against a natural person who, or a corporation which, would have been liable to an action in favor of the decedent, by reason thereof, if death had not ensued. Such an action must be commenced within two years after the decedent's death."

On the 13th day of November, 1902, the intestate, a ship carpenter in the employ of the defendant corporation, was

engaged in repairing a float, moored alongside one of its piers, and by reason of the alleged negligent acts of the defendant was instantly killed, being crushed between the float and the pier. The jury rendered a verdict in favor of the plaintiff for two thousand dollars, and the Appellate Division having unanimously affirmed the judgment entered thereon, the facts are conclusively settled in favor of plaintiff, to the effect that the defendant was negligent and the intestate free from, contributory negligence.

The counsel for the appellant calls our attention to several alleged legal errors founded on the refusal of the trial judge to charge certain requests as to the negligence of the intestate and as to his assumption of obvious risks. The answer to these questions depended upon the conclusion reached by the jury on conflicting evidence, and the trial judge, in a charge that was eminently fair to both parties, properly submitted the points in controversy to the triers of fact.

The appellant's counsel, however, raises an interesting question of law as to the proper construction to be given section 1902 of the Code of Civil Procedure, already quoted in full, and other sections to which reference will be presently made. It is a conceded fact that the intestate's widow and next of kin are non-resident aliens, domiciled in Norway, and the appellant insists that this action cannot be maintained for their benefit.

This court, so far as we are advised, has never passed upon the question, although it has been considered in the lower courts. (*Tanas* v. *Municipal Gas Co.*, 88 App. Div. 251, and cases cited.) The courts of other states are at variance; Indiana, Pennsylvania and Wisconsin holding the action cannot be maintained, while Massachusetts, Illinois, Alabama and Arizona take the contrary view.

It is to be observed that section 1902 of the Code of Civil Procedure is general in its terms, providing in case of death by negligent act the legal representative may maintain an action for the benefit of husband, wife or next of kin; there are no words of limitation, no expression of the legislative

will that the recovery authorized shall be distributed to residents only.

It is argued that this statute has no extraterritorial effect and that public policy requires it should be construed as limited to beneficiaries residing within the jurisdiction. It is well to bear in mind at the outset of this inquiry the precise character of our statute, which differs in some respects from Lord Campbell's Act (9 and 10 Victoria, ch. 93), which is one of the earliest departures from the rule of the common law, that purely personal wrongs died with the person who suffered them; this act has been copied to a greater or less extent in many of our sister states. The first section creates the cause of action and the second section authorizes the executor or administrator of the deceased to bring the action, and the damages, "after deducting the cost not recovered from the defendant, shall be divided between the beforementioned parties (wife, husband, parent and child of deceased), in such shares as the jury, by their verdict, shall find and direct."

In *Adam* v. *British, etc., Steamship Co.* (L. R. [2 Q. B. Div. 1898] 430) it was held that this act and its amendments (27 and 28 Victoria, ch. 95) did not apply for the benefit of aliens abroad. The learned court said: "The intention of the Legislature is to be collected from the statute; and I see no implied, and certainly no express intention to give to foreigners out of the jurisdiction a right of action which even British subjects had not until the passing of 9 and 10 Victoria, ch. 93. Moreover, the statute provides in section 2 for the division of the damages recovered amongst the various persons to be benefited in proportion to be assessed by the jury. It appears to me impossible to hold that it was intended, there being no expression to that effect, to cast upon juries such a duty as this in regard to the distant family of a deceased, and possibly polygamous, alien." The foregoing case was dissented from in *Davidson* v. *Hill* (L. R. [2 K. B. Div. 1901] 606).

Our Code of Civil Procedure contains a somewhat different

legislative scheme. Section 1902, which creates the cause of action, has already been discussed. Section 1903 provides as follows : " The damages recovered in an action, brought as prescribed in the last section, are exclusively for the benefit of the decedent's husband or wife, and next of kin ; and, when they are collected, they must be distributed by the plaintiff, as if they were unbequeathed assets, left in his hands, after payment of all debts, and expenses of administration. But the plaintiff may deduct therefrom the expenses of the action, the reasonable funeral expenses of the decedent and his commissions upon the residue ; which must be allowed by the surrogate, upon notice, given in such a manner and to such persons, as the surrogate deems proper." By this section the damages recovered, while not subject to payment of the debts of deceased and the general expenses of administration, are charged with the expenses of the action, the reasonable funeral expenses of deceased and the commissions of plaintiff on the residue.

Section 1904 defines the precise nature of the recovery as " a fair and just compensation for the pecuniary injuries, resulting from the decedent's death, to the person or persons, for whose benefit the action is brought." Section 1905 reads : " The term, ' next of kin,' as used in the foregoing sections, has the meaning specified in section 1870 of this act." Section 1870 reads : " The term, ' next of kin,' as used in this title, includes all those entitled, under the provisions of law relating to the distribution of personal property, to share in the unbequeathed assets of a decedent, after payment of debts and expenses, other than a surviving husband or wife."

It thus appears that if the alien husband, or wife, or next of kin, residing abroad, are permitted to share in the distribution of damages, the jury are not required, as under Lord Campbell's Act, to find and direct how the fund shall be distributed, the Statute of Distributions having been made applicable.

It is desirable to ascertain the conditions that doubtless induced the legislature more than half a century ago to abro-

gate. the principle of the common law which declared that the cause of action for purely personal wrongs died with the person, and to create a new cause of action in favor of those who had suffered pecuniary injuries, resulting from death by negligence. (Laws of 1847, ch. 450, p. 575; Laws of 1849, ch. 256, p. 388.)

This rule of the common law, judged by the standards of to-day, rested on a foundation that was neither just nor enlightened; it had its origin in an age when the many phases of our modern civilization, which must have impelled the legislature to act, did not exist. During the nineteenth century the world witnessed many and important changes; national isolation passed away; international communication became universal; all civilized mankind were brought together in commercial, social and intellectual intercourse; foreign travel became general; the result of these conditions was that the old prejudice against the foreigner practically disappeared.

Out of this complete revolution in the character of international relations there arose a condition in the world of labor having a direct bearing on the question we are considering. Throughout the last century the emigrants from many lands came to us in constantly increasing numbers, swelling the ranks of labor and a majority of them ultimately attaining the dignity of citizenship. Many of these toilers in mines, on public works, railroads and the numberless fields of manual labor, receive a moderate wage and are compelled to leave in foreign lands those who are dependent upon them and for whose support they patiently work on, indulging the hope that ultimately they may bring to these shores a mother, or wife and children.

The principle underlying the legislation we are considering is manifestly the protection of those who suffer pecuniary loss when a laborer or servant is killed by the negligent act of the individual or corporation employing him. The clear intention of the legislature is that the negligent employer shall no longer escape the consequences of his act by the death

of his servant, but shall respond in damages to those who have suffered pecuniary loss.

It is difficult to conceive of any argument springing from public policy, sound reason, or a proper discrimination between the rights of the citizen and the alien, that should prevent the alien husband, wife, or next of kin of a laborer killed by reason of his employer's negligence, from receiving those damages that a jury has awarded a local legal representative who derives his authority from, and acts under the control of the Surrogate's Court. The damages are imposed upon a negligent employer as compensation to those who suffer by his act, and there is no valid reason, as it seems to us, why they should not be paid to the survivors whether residing here or in some foreign jurisdiction. The statute not only benefits the survivors, but protects the laboring man, as it tends to enforce observance, by the employer, of the rule requiring him to furnish his servant a safe place in which to work. The laborer, leaving wife and children behind him and coming here from abroad, has a right to enter into the contract of employment, fully relying upon the statute. The conflict of authority in England and our sister states leads us to deal with this question on principle and to base our answer to it on reasons that are weighty and controlling.

In *Mulhall* v. *Fallon* (176 Mass. 266) HOLMES, Ch. J., said, in discussing this question (p. 268): " It is true that legislative power is territorial and that no duties can be imposed by statute upon persons who are within the limits of another state. But rights can be offered to such persons, and if, as is usually the case, the power that governs them makes no objection, there is nothing to hinder their accepting what is offered." Again, at page 269, the learned judge, referring to the argument that words of limitation must be read into the statute, said : " We cannot think that workmen were intended to be less protected if their mothers happen to live abroad, or less protected against sudden than against lingering death. In view of the very large amount of foreign labor employed in this state, we cannot believe that so large an

exception was silently left to be read in."   This reasoning of the learned judge meets our approval.

The judgment and order appealed from should be affirmed, with costs.

CULLEN, Ch. J., GRAY, O'BRIEN, HAIGHT, VANN and WERNER, JJ., concur.

Judgment and order affirmed.