WALTER G. HAMILTON, County Treasurer of the County of Rockland, as Public Administrator of the Estate of STEPHEN MISTSCHOOK, Deceased, Respondent, *v.* ERIE RAILROAD COMPANY, Appellant.

Negligence — cause of action for death of person caused by negligence is statutory only and is not a part of the estate of the decedent — international law — consuls and consular officers of foreign nations not authorized to settle and release a cause of action for a death accruing to beneficiary under the· statute. (Code Civ. Pro. § 1902.)

1. On examination of the facts in an action to recover damages for death caused by negligence, *held,* that the case was properly submitted to the jury on the question of the negligence of defendant and of plaintiff's contributory negligence. (*Parsons* v. *Syracuse, B. & N. Y. R. R. Co.,* 205 N. Y. 226, followed.)

2. Under our statute the cause of action to recover for the death ·of a person caused by negligence is created by the statute and is original and not derivative. It is not a part of, and has no relation with, the estate of the decedent. The damages are allowed, not for an injury to his estate, but for an injury, through the loss of him, to the estate of the beneficiaries. · The executor or administrator of the decedent is a mere nominal party, without any interest in the damages, holding them, when recovered, in the capacity of a trustee or agent for the beneficiaries.

3. While international law vests consuls and consular officials with the right to interpose claims for the restitution of property belonging to the subjects of their own country, neither international law nor judicial decision authorizes or permits them to dispose of, control or convert into another form the uninvaded and secure property of their living countrymen.

4. The Imperial Russian consul-general is not authorized by either international law or by treaty with Russia to settle and release a cause of action accruing to beneficiaries thereof under section 1902 of the Code of Civil Procedure.

*Hamilton* v. *Erie R. R. Co.*, 169 App. Div. 936, affirmed.

(Argued November 3, 1916; decided November 28, 1916.)

APPEAL, by permission, from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered June 30, 1915, affirming a judgment in favor of plaintiff entered upon a verdict directed by the court.

The nature of the action and the facts, so far as material, are stated in the opinion.

*William C. Cannon* and *Frederic B. Jennings* for appellant. The deceased was guilty of contributory negligence as a matter of law. (*Swart* v. *N. Y. C. R. R. Co.*, 81 App. Div. 402; *McSweeney* v. *E. R. R. Co.*, 93 App. Div. 496; *Dolfini* v. *Erie R. R. Co.*, 178 N. Y. 1; *Spencer* v. *N. Y. C. & H. R. R. R. Co.*, 123 App. Div. 789; *Cunningham* v. *D., L. & W. R. R. Co.*, 142 App. Div. 303.) The settlement made by the defendant with the Russian vice-consul was valid, and the receipt and release signed by the vice-consul constitute a bar to this action. (*Hauenstein* v. *Lynham*, 100 U. S. 483; *Matter of Cooper*, 143 U. S. 472; *Matter of Meekin* v. *B. H. R. R. Co.*, 164 N. Y. 145; *McGurty* v. *New Amsterdam Co.*, 115 App. Div. 688; *Matter of Brennan*, 160 App. Div. 401; *Matter of Tortaglio*, 12 Misc. Rep. 245; *Matter of Davenport*, 43 Misc. Rep. 573.)

*Frederic C. Scofield, Herbert C. Smyth* and *Frederic W. Bisgood* for respondent. There is sufficient evidence to sustain the decision of the court that the defendant was negligent and that plaintiff's intestate was not guilty of contributory negligence. (*Parsons* v. *City of Syracuse*, 205 N. Y. 226; *O'Hara* v. *Central R. R. of N. J.*,

183 Fed. Rep. 739; *Moebus* v. *Hermann*, 108 N. Y. 349; *Brassel* v. *N. Y. C. & H. R. R. R. Co.*, 84 N. Y. 241; *Pruey* v. *N. Y. C. & H. R. R. R. Co.*, 41 App. Div. 158; 166 N. Y. 616; *Wieland* v. *D. & H. Canal Co.*, 167 N. Y. 19; *Cordell* v. *N. Y. C. & H. R. R. R. Co.*, 64 N. Y. 535; *Lewis* v. *L. I. R. R. Co.*, 162 N. Y. 52; *Bohringer* v. *Campbell*, 154 App. Div. 879; *Hintze* v. *N. Y. C. & H. R. R. R. Co.*, 149 App. Div. 217; *Schuster* v. *Erie R. R. Co.*, 145 App. Div. 71; 205 N. Y. 569.) Upon the facts the direction of a verdict for the plaintiff was proper. (*Pruey* v. *N. Y. C. & H. R. R. R. Co.*, 41 App. Div. 158; 166 N. Y. 616.) The alleged settlement made by the defendant with the Russian vice-consul was not valid nor binding upon this plaintiff and the alleged receipt and release do not constitute a bar to this action. (*Craignet* v. *Pettit*, 2 Dallas, 234; *Johnson* v. *Bales*, 2 Paine, 601; *Stuber* v. *McEntee*, 142 N. Y. 200; *Cohen* v. *L. I. R. R. Co.*, 154 App. Div. 603; *Matter of Meng*, 96 Misc. Rep. 126.)

COLLIN, J. The plaintiff seeks to recover, under the statute (Code of Civil Procedure, sections 1902–1905), the damages for a neglect of the defendant through which his intestate was killed while crossing, upon a highway, the tracks of defendant. The entire evidence at its close was submitted to the trial justice through motions for a dismissal of the complaint, the direction of a verdict for the defendant, and the direction of a verdict for the plaintiff. The justice directed a verdict in favor of the plaintiff. The consequent judgment was unanimously affirmed by the Appellate Division. The chief judge of this court granted the defendant leave to appeal to it.

The tracks of the railroad at the highway crossing ran easterly and westerly. The intestate, in a farm wagon drawn by a team of horses which he was driving, stood on the southern side of and about twenty feet from the east-bound or southern track, while a west-bound freight

train passed on the west-bound or northern track over the crossing, and then drove upon the crossing. The evidence permitted the trial judge to find: The engine of an east-bound passenger train going at the rate of fifty miles an hour collided with the wagon at five o'clock and forty minutes in the morning of March 3, 1909; the sun had not risen and a mist or fog prevailed; the crossing was unprotected except for an automatic electric signal bell, which was out of order and was ringing and rang continuously; no warning of the approach of the east-bound train was given by the sounding of the bell or whistle of its engine, and the passing freight train made considerable noise. Those findings supported the conclusion that the defendant was negligent.

The view of the intestate toward the west, as he stood waiting for the passing of the freight train, and as he passed on northerly to a point about ten or fifteen feet from the east-bound track, was obstructed; the heads of the horses were twelve or fourteen feet north of the intestate, and the horses were upon the east-bound track at the time the intestate could first have seen the approaching engine; the engine was not less than one hundred and twenty-five feet and not more than two hundred and twenty-five feet from the crossing, and was traveling at the rate of about seventy-three feet in a second at the time the intestate could have first seen it or the train. While the evidence in regard to the view of the approaching train practicable to the intestate was in direct contradiction, it supports as facts those statements. Our decision in *Parsons* v. *Syracuse, B. & N. Y. R. R. Co.* (205 N. Y. 226, 228) is an authority upholding the trial court in finding that the intestate was free from contributory negligence. In that case Judge HISCOCK, writing for the court, after stating that the case was submitted to the jury upon two theories, the first of which was, it was the duty of the intestate to "look and listen only in the event that the jury should

find from the evidence in this case that it would have availed him had he looked and listened," said: "I think that the evidence justified the court in submitting the case to the jury on the first theory. Taking into account the speed of the engine, the absence of the usual signals either of sound or light, the character of the night and the obstructions to the view, the jury might have found that the exercise of reasonable care by intestate in looking and listening for the approach of a train would not have enabled him to detect the approach of this light engine in time to escape the collision and, therefore, have relieved him from the imputation of contributory negligence."

The appeal presents the more serious question, whether or not there had been a valid settlement and release of the cause of action by the beneficiaries of it, through and by the acts of the Imperial Russian consul-general at New York. On October 6, 1909, the defendant paid the Imperial Russian consul-general, through the vice-consul, four hundred dollars in full settlement of all claims and demands against it for the death of the intestate and the consul-general executed and delivered to the defendant a receipt of the amount "in full settlement of all claims and demands against the company for the death" of the intestate, and, in the name of the widow "as wife and Admx.," a release "for myself, my heirs, my executors, administrators and assigns" from all claims and demands arising or growing out of the death. The next of kin of the intestate were three infant children residing with their mother in the village of Ozero, province of Volhynia, Russia. The four hundred dollars were paid to the Russian authorities of that province and by them deposited in a local bank to the credit of the heirs of the intestate. The appellant asserts and argues that the transaction constituted, by virtue of a power given the consul-general by the treaty to be referred to, a settlement of the cause at action.

Through the year 1909, a treaty between the United States and Russia contained the clause: "The two contracting parties shall have the liberty of having, in their respective ports, Consuls, Vice-Consuls, Agents and commissaries of their own appointment, who shall enjoy the same privileges and powers, as those of the most favored nations." The appellant correctly asserts that under this clause the powers of the Russian consul and vice-consul in the matter of settling with and releasing the defendant from the damages arising from the death of the intestate were equal to those given the consular representatives of any other nation by a treaty with the United States, and specifically refers us to the provision of the then existing treaty with Spain: "The Consuls-General, Consuls, Vice-Consuls or Consular Agents of the respective High Contracting Parties shall have, under the laws of their country and regulations of their own Government so far as compatible with local laws, the right of representing the absent, unknown or minor heirs, next of kin or legal representatives of the citizens or subjects of their country, who shall die within their consular jurisdiction; as well as those dying at sea whose property is brought within their consular district; and of appearing either personally or by delegate in their behalf in all proceedings relating to the settlement of their estate until such heirs or legal representatives shall themselves appear. Until such appearance the said consular officers shall be permitted, so far as compatible with local laws, to perform all the duties prescribed by the laws of their country and the instructions and regulations of their own Government for the safe-guarding of the property and the settlement of the estate of their deceased countrymen."

An assertion of the respondent is that the record contains no evidence that the deceased was at the time of his death a citizen of Russia or a subject of the Czar of Russia. The complaint alleges: "That the said Stephen Mistschook was at the time of his death a resident of

Rockland County and left him surviving a widow and three minor children, Eva Mistschook, Julien Mistschook and Elarion Mistschook, all dependent upon him for support and all aliens resident in Russia, Europe." The answer alleges that the intestate was, at the time of his death a subject of the Emperor of Russia. The counsel for the plaintiff, upon the trial, in the opening of the case to the jury, stated that the intestate came to this country from Russia and had arranged to bring his wife and three children to this country to make them citizens of it. Through a deposition, the widow testified that on March 3, 1909, she was and prior thereto and since November 3, 1896, had been the wife of the intestate; that they were married in the village of Ozero, province of Volhynia, Russia; that they lived at Ozero until 1907, when the intestate said good-bye to her there, telling her he was going to America. He arrived in the United States about February, 1907. He was thirty-two years old at the time of his death. The record does not disclose the country of his birth. It was thus proven that the intestate was an alien; that at the age of twenty he resided and married, and through the succeeding twelve years resided, in Russia; that his wife and children continued until his death to reside and receive there their support from him, and were aliens. The facts created the presumption that he was, while a resident, a citizen of Russia. The relation is presumed to have continued until a change of citizenship is proved. (Shelton v. Tiffin, 6 How. [U. S.] 163, 185; Hauenstein v. Lynham, 100 U. S. 483; Campbell v. Wallace, 12 N. H. 362; State ex rel. Phelps v. Jackson, 79 Vt. 504.) Moreover, the acts of the Russian consul-general under the treaty created the presumption that the intestate was a citizen or subject of Russia, because otherwise those acts would have been nugatory and mischievous. The acts of a public officer which presuppose the existence of other acts or conditions to make them legally operative are pre-

sumptive proofs of the latter. (*Bank of the United States* v. *Dandridge*, 12 Wheat. 64; *Cincinnati, New Orleans & Texas Pac. R. Co.* v. *Rankin*, 241 U. S. 319, 327; *Swarthout* v. *Ranier*, 143 N. Y. 499, 504; *Pringle* v. *Woolworth*, 90 N. Y. 502.) " The general presumption is that no official or person acting under an oath of office will do anything contrary to his official duty, or omit anything which his official duty requires to be done." (*Matter of Marcellus*, 165 N. Y. 70, 77.) We conclude from the proofs that the intestate was, at the time of his death, a citizen of Russia. Concededly, he died within the territorial jurisdiction of the consul-general.

We turn next to the question, did the consul-general have the right to settle the cause of action belonging to the widow and next of kin. The alienage of the beneficiaries of the cause of action does not affect their rights under the statute (*Alfson* v. *Bush Co.*, 182 N. Y. 393) and we will assume for the purposes of this case that the widow and children of the intestate, who under the statute (Code of Civil Procedure, section 1903) constituted the beneficiaries, had the right (the infants being legally represented) to settle the cause of action at any time prior to the issuance of the letters of administration on March 1, 1911. The question presented is, did the consul-general, as such, and without authority from the beneficiaries, have that right.

At the outset it should be comprehended that under our statute the cause of action is created by the statute and is original and not derivative. It is not a part of, and has no relation with the estate of the decedent. The damages are allowed, not for an injury to his estate, but for an injury, through the loss of him, to the estate of the beneficiaries. The executor or administrator of the decedent is a mere nominal party, without any interest in the damages, holding them, when recovered, in the capacity of a trustee or agent for the beneficiaries. (*Hegerich* v. *Keddie*, 99 N. Y. 258; *Matter of Meekin* v. *Brooklyn*

*Heights R. R. Co.*, 164 N. Y. 145; *Kelliher* v. *New York Central & H. R. R. R. Co.*, 212 N. Y. 207.) The claim of the beneficiaries of such a cause of action, in its inherent nature and source, is of the same quality and character as the large class of claims for injuries to the manifold varieties of property of claimants.

The rights of consuls and consular officials rest on international law as well as on treaty stipulations. International law regards them as mercantile agents of the government appointing them, authorized to protect the commercial interests of its citizens or subjects in the country to which they are accredited and clothed only with authority for commercial purposes; to conserve and guard the property within their territorial jurisdiction of their countrymen dying therein is important among their rights and duties. (*The Anne*, 3 Wheat. 435; *Seidel* v. *Peschkaw*, 27 N. J. L. 427; *Matter of D'Adamo*, 212 N. Y. 214.) While it vests them with the right to interpose claims for the restitution of property belonging to the subjects of their own country, I have found no rule of international law or judicial decision indicating that it authorizes or permits them to dispose of, control or convert into another form the uninvaded and secure property of their living countrymen. The decision and opinion in *The Bello Corrunes* (6 Wheat. 152, 168) upholds the contrary conclusion. It is clear, I think, that the general law of nations does not sustain as valid the settlement with the appellant of the consul-general, and this conclusion is assured by the fact that the counsel for the appellant does not invoke here that law. Nor has he brought to our attention any law of Russia or of this country supplementing, in this respect, international law. The treaty between the United States and Russia, in conjunction with that between the United States and Spain, of which we have already spoken, is the foundation of his claim and argument.

The Federal Constitution declares a valid treaty the

supreme law of the land. (Article VI.) Where a treaty affects the rights of litigants, it binds those rights and is as much to be regarded by the court as an act of Congress. (*United States* v. *Schooner Peggy,* 1 Cranch, 103; *Whitney* v. *Robertson,* 124 U. S. 190; *Maiorano* v. *Baltimore & Ohio R. R. Co.,* 213 U. S. 268.) It is paramount to the Constitution and statutes of the state (*Ware* v. *Hylton,* 3 Dallas, 199, 237), but not to acts of Congress. (*Head Money Cases,* 112 U. S. 580.) Its application to any case and its construction, if construction is needed, are, as with any other law, questions for the court.

The particular language of the Spanish treaty which, the appellant asserts, gave the consul-general the right to settle the claim, is that giving to consular officers " the right of representing the absent, unknown or minor heirs, next of kin or legal representatives of the citizens or subjects of their country, who shall die within their consular jurisdictions; * * * and of appearing either personally or by delegate in their behalf in all proceedings relating to the settlement of their estate until such heirs or representatives shall themselves appear * * * so far as compatible with local laws." The argument is, the right of "representing" is the right to do for the represented persons whatsoever they might have done for themselves, and the clauses quoted contemplate a representation without as well as with judicial proceedings. No legislative or judicial law of Russia or the state forbade the representation.

It is manifest that the language does not clearly and with certainty warrant the application and effect given it by the appellant. It is not clear that the language has any application to the widow and children of the intestate as the owners of the claim or property, which is theirs not by devolution or succession and as a part of the estate of the intestate, but through original and primary ownership. Our inquiry, therefore, is as to what, in

such respect, was intended in the quoted language by the contracting governments, and in pursuing it we should adopt the same general rules, which are applicable in the construction of statutes, contracts and written instruments generally. The entire provisions of the treaty relevant to the inquiry are to be studied, the words used are to be given their natural and ordinary signification, a sensible and reasonable effect must be given unless the words forbid, and the cognate rules of international law and of the legislation of the government may be considered. (*Matter of D'Adamo*, 212 N. Y. 214; *United States* v. *Choctaw, etc., Nations*, 179 U. S. 494; *Collins* v. *O'Neil*, 214 U. S. 113; *Geofroy* v. *Riggs*, 133 U. S. 258.) A careful reading of the provisions of the treaty impels to the conclusion that the governments contemplated the asssured conservation, administration and settlement of the estates of the citizens of either who died in the country of the other, or dying at sea, left property which was brought into the country of the other. It is the heirs, next of kin or legal representatives of such citizens who are to be représented and represented as such; that is, as having an ownership or interest under the laws of intestacy in the estate of the deceased. They are to be represented as to such ownership or interest. The widow and children in the case at bar are not the subjects of such a representation. While the statute declares that the damages recovered are exclusively for the benefit of the decedent's husband or wife, and next of kin, the denomination "next of kin" in connection with the preceding designation is merely a convenient means of designating, comprehensively and definitely, the distributees of the damages recovered. The damages are theirs, not through the laws of intestacy or as a part of the estate of the intestate, but through their original right to them created by the statute. A confirmation of the correctness of such conclusion is contained in the provision that as to the countrymen of con-

suls who die at sea, the right of representation is not given unless the property of the deceased is brought into the consular district. The existence of an estate of the intestate in the consular district is the ground for the right to represent. The remaining language of the treaty pro·vision denotes that the intention of the governments was to provide by it for the safeguarding of the property and the settlement of the estates of the citizens of either dying in the country, of the other or at sea. The language has a completed purpose and effect if it be held to authorize the consular officers to act for the heirs, next of kin or legal representatives of their countrymen, of the description set forth, in relation to their estates in insti-tuting, appearing for and participating in their behalf in legal or other proceedings for the proper administration, conserving and guarding of the estates. This construction is further confirmed by the fact that it harmonizes with the functions of consuls under the established international practice. (*Matter of D'Adamo*, 212 N. Y. 214.)

The construction urged by the appellant is not reasonable. It would permit consular officers to transfer, dispose of, or convert into a different form the property of the absent, unknown or minor heirs or next of kin of the ·citizens or subjects of their country who shall die within their consular jurisdiction. The vice-consul effected such a result in the present case. The right of action was a property right of the beneficiaries of it. (*Matter of Meekin* v. *Brooklyn H. R. R. Co.*, 164 N. Y. 145.) The consul converted it into four hundred dollars. The construction urged by the appellant would justify his act. There is no distinction between the property right in question and the other property rights, if any, of the bene-·ficiaries or those of others similarly situated which would ·guard them against the effect of such a construction. The death of a fellow-countryman of a consular officer within the consular district would place at the disposal of the officer the property of the absent, unknown or minor

heirs and next of kin of the deceased.   The treaty in question is one of many between this and other countries containing identical or equivalent language to which our decision would be applicable.   The language and the rules controlling its interpretation forbid the construction given by the appellant.

There is no meritorious exception on the part of the appellant to the rulings of the trial justice in admitting or rejecting evidence.

The judgment should be affirmed, with costs.

WILLARD BARTLETT, Ch. J., HISCOCK, CHASE, HOGAN, CARDOZO and POUND, JJ., concur.

Judgment affirmed.