JOSEPH GRECO, as Administrator of the Estate of MARY GRECO, Deceased, Respondent, *v.* S. S. KRESGE COMPANY, Appellant.

Argued November 18, 1937; decided January 18, 1938.

*Alfred L. Becker, Robert M. McCormick* and *Robert M. McCormick, Jr.,* for appellant. No action lies under section 130 of the Decedent Estate Law (Cons. Laws, ch. 13) for death resulting solely from a breach of warranty implied under section 96 of the Personal Property Law (Cons. Laws, ch. 41). Such death does not result from a " wrongful act, neglect or default." (*Greenwood* v. *Thompson Co.,* 213 Ill. App. 371; *Kress & Co.* v. *Lindsey,* 262 Fed. Rep. 331; *Howson* v. *Potter Beef Co.,* 87 N. H. 200; *Burkhardt* v. *Armour & Co.,* 115 Conn. 249; *Gimenez* v. *Great A. & P. T. Co.,* 264 N. Y. 390; *Ryan* v. *Progressive Grocery Stores,* 255 N. Y. 388; *Chysky* v. *Drake Bros. Co.,* 235 N. Y. 468; *Bourcheix* v. *Willow Brook Dairy,* 268 N. Y. 1; *Race* v. *Krum,* 222 N. Y. 410; *Van Bracklin* v. *Fonda,* 12 Johns. 468; *Rinaldi* v. *Mohican Co.,* 225 N. Y. 70; *Bernstein* v. *Queens County Jockey Club,* 222 App. Div. 191; *Van Beeck* v. *Sabine Towing Co.,* 300 U. S. 342; *Alton* v. *Midland Ry. Co.,* 19 C. B. [N. S.] 213; *Bradshaw* v. *Lancashire & G. Ry. Co.,* 10 C. P. 189; *Potter* v. *Met. Dist. Ry. Co.,* 30 L. T. [N. S.] 765; *Leggott* v. *Gt. Northern Ry. Co.,* 1 Q. B. D. 599; *Jackson* v. *Watson & Sons,* 2 K. B. 193; *Lichtenstern* v. *Augusta-Aiken R. & E. Corp.,* 165 App. Div. 270.)

*Sidney M. Lindner, George I. Swetlow* and *Robert M. Lindner* for respondent. The breach of the warranty was a " wrongful act " and " default " within the purview of section 130 of the Decedent Estate Law. (*Lewis* v. *Ocean Accident & Guarantee Corp.,* 224 N. Y. 19; *Clark* v. *London General Omnibus Co.,* [1906] 2 K. B. Div. 648; *Hudson* v. *Lynn & Boston R. R. Co.,* 185 Mass. 510; *McLean* v. *Burbank,* 12 Minn. 530; *Oldfield* v. *New York & Harlem R. R. Co.,* 14 N. Y. 310; *Brown* v. *Buffalo &*

*State Line R. R. Co.*, 22 N. Y. 191; *Sullivan* v. *Dunham*, 161 N. Y. 290; *Busch* v. *Interborough R. T. Co.*, 187 N. Y. 388; *Harkins* v. *Provenzo*, 116 Misc. Rep. 61; *Ryan* v. *Progressive Grocery Stores*, 255 N. Y. 388; *Van Bracklin* v. *Fonda*, 12 Johns. 468; *Hoe* v. *Sanborn*, 21 N. Y. 552; *Race* v. *Krum*, 222 N. Y. 410; *McSpedon* v. *Kunz*, 271 N. Y. 131.) An action based on a breach of an implied warranty of fitness for human consumption has been treated in the same manner as tort actions resulting in personal injuries. (*Hermes* v. *Westchester Racing Assn.*, 213 App. Div. 147; *Bernstein* v. *Queens County Jockey Club*, 222 App. Div. 191; *Matter of Lowe Pharmacy, Inc.*, 249 App. Div. 845.) The breach of the warranty is a wrong. (*Ryan* v. *Progressive Grocery Stores*, 255 N. Y. 388; *Harkins* v. *Provenzo*, 116 Misc. Rep. 61.)

RIPPEY, J. Plaintiff is suing as administrator under section 130 of the Decedent Estate Law (Cons. Laws, ch. 13) for damages for the death of his wife alleged to have resulted from the eating of infected pork frankfurters or sausages purchased from defendant, a retailer, on April 28, 1933. Two causes of action were set up in the complaint. The first was based upon the theory of a breach of an implied warranty that the food was fit for human consumption under section 96 of the Personal Property Law (Cons. Laws, ch. 41) and the second upon the theory of negligence. The second cause of action was dismissed by consent. Defendant's motion to dismiss the first cause of action was denied. The Appellate Division upon affirming the decision of the trial court has certified the following question for our consideration: " The second cause of action having been withdrawn, does the complaint state facts sufficient to constitute a cause of action? "

In the complaint in the case at bar, as explained and amplified by the bill of particulars, it is alleged, among other things, that the defendant offered provisions and

food stuffs for sale to the public as a part of its retail business and invited the general public to enter its premises and purchase the same; that among such provisions and food stuffs was included a meat product known as " pork frankfurters or sausages," a quantity of which the deceased, Mary Greco, purchased and cooked, within two hours after the purchase, and consumed; that the said pork frankfurters or sausages were impliedly warranted by the defendant, its agents, servants and employees as fit for human consumption under the provisions of section 96 of the Personal Property Law and as being harmless and pure and containing no harmful or injurious substances. It is further alleged that the deceased relied upon such warranties in the purchase and consumption of the food, that in breach of the warranties the product contained harmful and injurious ingredients and foreign bodies and as a result the deceased, after eating said product, contracted trichinosis, became seriously ill, and died. Negligence on the part of the defendant resulting in the injuries causing death is specifically disclaimed.

This action being brought as an action to recover for death, the burden was upon the defendant to plead and prove lack of care on the part of the deceased. (Decedent Estate Law, § 131) and the defendant so pleaded in its answer as a complete defense. The allegation to the effect that the food was offered for sale and sold by the defendant for human consumption may be deemed sufficient to admit evidence concerning the circumstances surrounding the sale. The defendant was presumed to know, in making such sale, that it was fit for the use for which it was sold. (*Van Bracklin* v. *Fonda*, 12 Johns. 468; *Race* v. *Krum*, 222 N. Y. 410.) Although the case of *Race* v. *Krum* (*supra*) was one where a dealer prepared the food which he sold and the cause of action arose prior to the enactment of the Uniform Sales Act (L. 1911, ch. 571), it was nevertheless deliberately decided, as stated

in *Rinaldi* v. *Mohican Co.* (225 N. Y. 70), "that accompanying all sales by a retail dealer of articles of food for immediate use there is an implied warranty that the same is fit for human consumption." It is there pointed out (pp. 72, 73) that since the enactment of section 96 of the Personal Property Law, in a sale of food " there is no longer an implied warranty of fitness unless the buyer expressly cr by implication acquaints the seller with the purpose of the purchase and unless it appears that the buyer relies on the seller's skill or judgment. Even then if the buyer has examined the goods and should have discovered the defect there is no warranty. The burden of showing that he has made known his purpose and that he has relied upon the seller is on him who claims the existence of an implied warranty. If either of these two facts do not appear he fails in his claim * * *. We think that the mere purchase by a customer from a retail dealer in foods of an article ordinarily used for human consumption does by implication make known to the vendor the purpose for which the article is required. Such a transaction standing by itself permits no contrary inferences."

Relying upon the implied warranty that the food sold to her was fit for human consumption, Mary Greco might have maintained in her lifetime a cause of action on contract for damages for personal injuries for its breach. (*Rinaldi* v. *Mohican Co.*, *supra; Ryan* v. *Progressive Grocery Stores, Inc.*, 255 N. Y. 388; *Gimenez* v. *Great Atlantic & Pacific Tea Co.*, 264 N. Y. 390; *McSpedon* v. *Kunz*, 271 N. Y. 131.) Personal injury to the purchaser was the natural and necessary result of the breach of warranty reasonably within the contemplation of the parties when the sale was made and warranty given. (*Ryan* v. *Progressive Grocery Stores, Inc.*, *supra*, at p. 395.) Though not based on fraud or deceit or negligence, the action is nevertheless maintainable to recover damages for personal injury necessarily flowing from the breach of

the warranty. Though the breach resulted in personal injuries arising out of the wrongful act, neglect or default of the seller in violation of its duty to the purchaser under the contract, she would not have been required to frame the complaint along the usual lines employed in actions to recover damages for negligence. (See cases above.)

Section 130 of the Decedent Estate Law, so far as here material, provides that: " The executor or administrator duly appointed in this state, or in any other state, territory or district of the United States, or in any foreign country, of a decedent who has left him or her surviving a husband, wife, or next of kin, may maintain an action to recover damages for a wrongful act, neglect or default, by which the decedent's death was caused, against a natural person who, or a corporation which, would have been liable to an action in favor of the decedent by reason thereof if death had not ensued."

Under the statute, the elements which must necessarily be present to enable plaintiff to maintain this action are (1) the presence of the surviving spouse or next of kin, (2) the presence of a natural person or corporation whose wrongful act, neglect or default caused the death, and (3) the allegation of a cause of action for injuries to the deceased which might have been maintained by the deceased by reason of such wrongful act, neglect or default had death not ensued. The plaintiff alleges that the husband and next of kin survive. Defendant is the corporation who sold the food and made the warranty, the breach of which caused the personal injuries to deceased which resulted in her death. The inquiry here is whether the breach of the implied warranty as alleged in the complaint, negligence being disclaimed, was a " wrongful act, neglect or default " within the meaning of the statute. The answer depends wholly upon a solution of the question as to whether breach of the implied warranty, in a case such as this, where personal injury to the person to whom the warranty is made

results from the breach, is tortious in nature and effect and is due to the wrongful act or neglect or default of the person making and breaching the warranty. If so, the statute gives a cause of action to the surviving husband and next of kin although, except for the statute, the cause of action for personal injuries arising out of the breach of warranty, would have abated at the death of Mary Greco (*Hamilton* v. *Erie R. R. Co.*, 219 N. Y. 343, 350), or, because of lack of privity, no cause of action arose in favor of or against a stranger to the contract. (*Chysky* v. *Drake Bros. Co.*, 235 N. Y. 468; *Redmond* v. *Borden's Farm Products Co.*, 245 N. Y. 512; *Turner* v. *Edison Storage Battery Co.*, 248 N. Y. 73; *Gimenez* v. *Great Atlantic & Pacific Tea Co.*, 264 N. Y. 390.) The statute has neither the purpose nor effect of changing the rule of the common law that actions to recover damages for personal injuries abate with the death of the person injured. It created a new and original cause of action based not upon damage to the estate of the deceased because of death but rather for the pecuniary injury to the surviving spouse and next of kin of the deceased from death caused by the wrongful act, neglect or default of another in a case where the deceased would have had a cause of action against such person had death not ensued (*Hamilton* v. *Erie R. R. Co.*, 219 N. Y. 343, 350; *Roche* v. *St. John's Riverside Hospital*, 96 Misc. Rep. 289; affd., 176 App. Div. 885) and it is not extinguished after it has once accrued by the death of specific beneficiaries named therein. (*Van Beeck* v. *Sabine Towing Co.*, 300 U. S. 342.)

The first of the " death acts " took effect in England on August 26, 1846 (9 & 10 Vict., ch. 93) and provided that an action would lie against a person only where death was caused by his " wrongful act, neglect, or default " in a case where such a cause of action might have been maintained by the person injured if death had not ensued. In *Pym* v. *Great Northern Ry. Co.*

(2 B. & S. 759; 8 Jur. [N. S.] 819, 820) it was said that "the condition, that the action could have been maintained by the deceased if death had not ensued, has reference, not to the nature of the loss or injury sustained, but to the circumstances under which the bodily injury arose, and the nature of the wrongful act, neglect, or default complained of." It has been generally held in England in cases cited in "The Complete Statutes of England Classified and Annotated in continuation of Halsbury's Laws of England" (Vol. 12, p. 335) that defenses available in ordinary actions for negligence were all available in an action brought under the statute. It is clear from the title and wording of the act, from the debate at the time of its enactment and from the decisions affecting its application that it related to and was intended to relate only to causes of action arising out of the wrongful act, neglect or default of another involving tortious acts. Our own death statute as first enacted in 1847 (Laws of 1847, ch. 450) was almost identical in wording and purpose with the English act. Although there have been a number of amendments, the original act has not been changed in so far as the condition attached that the action can be maintained only for death arising through the wrongful act, neglect or default of the person to be charged with liability in a cause which might have been maintained by the person injured had death not ensued. Here, as under the English act, decisive on whether the action may be maintained are the "circumstances under which the bodily injury arose and the nature of the wrongful act, neglect, or default" of which complaint is made.

Prior to the action for assumpsit, the remedy for breach of warranty was an action on the case for deceit. (Ames' Lectures on Legal History [1913], p. 136.) Even today, an action for breach of warranty is, in some respects, an action in tort. Mere breach of contract, generally speaking, is not a tort. Yet the distinction between torts

and breaches of contract is, oftimes, so dim and shadowy that no clear line of delineation may be observed and no accurate or satisfactory definition of either may be formulated. (*Rich* v. *N. Y. C. & H. R. R. R. Co.*, 87 N. Y. 382; *Busch* v. *Interborough R. T. Co.*, 187 N. Y. 388, 391.) Under each cause of action, whether framed in tort or on contract, default or breach of duty involves an injury. At times the same facts may warrant procedure *ex contractu* or *ex delicto*. At such times recovery is not conditioned on definition nor measured by a determination of whether it is grounded in a violation of a duty owing to another or in a breach of a contractual obligation. Nor is an action any the less on contract because the elements of damage arise out of a trespass (*Sullivan* v. *Dunham*, 161 N. Y. 290), or an assault (*Busch* v. *Interborough R. T. Co.*, *supra*) or other personal injury (*Doedt* v. *Wiswall*, 15 How. Pr. 128; affd., 15 How. Pr. 145; *Gillespie* v. *Brooklyn Heights R. R. Co.*, 178 N. Y. 347). Violation of a duty owing to another is a wrongful act; breach of a contract involving violation of duty may be likewise a wrongful act. Here, the duty rested on defendant to see, at its peril, that the food was fit for human consumption and it is based on considerations of public health and public policy (*Race* v. *Krum*, *supra*). Though the action may be brought solely for the breach of the implied warranty, the breach is a wrongful act, a default and, in its essential nature, a tort. The death statute has been held to embrace an action for damages for trespass although no negligence was involved (*Sullivan* v. *Dunham*, *supra*). A similar statute has also been held to embrace an action for breach of warranty, when the breach is a violation of duty and a "wrongful act." (*Greenwood* v. *Thompson Co.*, 213 Ill. App. 371; *McLean* v. *Burbank*, 12 Minn. 530.) In our own court, the breach of the implied warranty has been defined as a wrongful act (*Ryan* v. *Progressive Grocery Stores, Inc.*, 255 N. Y. 388, 395). Bouvier (Law Dict., vol. 1) defines "default"

as " the non-performance of a duty, whether arising under a contract or otherwise." By common understanding a breach of contract constitutes a default.

We conclude that the breach of the warranty in a case such as this was a " default " or " wrongful act " within the meaning of those terms as used in the statute not only as a matter of definition but within the clear legislative intent. Liability here is predicated upon the " default " or " wrongful act " of the seller and the exercise of due care on the part of the purchaser. The purchaser could recover, if living, because of the injury she received through the " wrongful act " or " default " of the seller based on the breach of the implied warranty that the food was fit for human consumption. The cause of action would not fail because the allegations of the complaint did not proceed along traditional lines employed in an action for negligence. Within the terms of the statute, the administrator in the case at bar may maintain the action for the " wrongful act, neglect or default " of defendant arising out of the breach of the implied warranty that the pork sausages sold to the deceased were fit for human consumption because the defendant would have been liable therefor in such an action brought by the deceased if death had not ensued. Scienter on the part of the seller is presumed.

Under the common law, a person injured through a breach of duty imposed upon another, might, in his or her lifetime, recover for such injury, but death put an end to liability of the person responsible for such breach. The statute was enacted to remedy partially that evil, not to perpetuate it by leaving the statute open to narrow construction. Apropos are the words of Judge CARDOZO in the closing paragraph of his opinion in *Van Beeck* v. *Sabine Towing Co.* (*supra*), where he refers to the construction to be given death statutes: " Death statutes," he writes, " have their roots in dissatisfaction with the archaisms of the law which have been traced to

their origin in the course of this opinion. It would be a misfortune if a narrow or grudging process of construction were to exemplify and perpetuate the very evils to be remedied (Cf. *The Arizona* v. *Anelich,* 298 U. S. 110, 123; *Beadle* v. *Spencer,* 298 U. S. 124, 128). There are times when uncertain words are to be wrought into consistency and unity with a legislative policy which is itself a source of law, a new generative impulse transmitted to the legal system. 'The Legislature has the power to decide what the policy of the law shall be, and if it has intimated its will, however indirectly, that will should be recognized and obeyed.' (Per Holmes, Circuit Justice, in *Johnson* v. *United States,* 163 Fed. 30, 32. Cf. *Gooch* v. *Oregon Short Line R. Co.,* 258 U. S. 22, 24; *South & Central American Commercial Co.* v. *Panama R. Co.,* 237 N. Y. 287, 291; 142 N. E. 666.) Its intimation is clear enough in the statutes now before us that their effects shall not be stifled, without the warrant of clear necessity, by the perpetuation of a policy which now has had its day. (*The Arizona* v. *Anelich, supra; Cortes* v. *Baltimore Insular Line, supra; Warner* v. *Goltra,* 293 U. S. 155.)"

The order should be affirmed, with costs, and the question certified answered in the affirmative.

CRANE, Ch. J., LEHMAN, O'BRIEN, HUBBS, LOUGHRAN and FINCH, JJ., concur.

Order affirmed.