## Butterfield *v.* Snellenburg et al., Appellant.

*Negligence—Harmful drugs—Failure to dilute—Permanent injury—
Proximate cause—Damages.*

1. In an action to recover damages for personal injuries where the ground on .which recovery is sought is that the defendants, through their agent or clerk in charge of the drug department in their general store, instead of furnishing the plaintiff for immediate use a proper and harmless dose of aromatiç spirits of ammonia, for which she had applied, "negligently prepared and compounded a dangerous, poisonous, corrosive and burning liquid mixture," the negligence charged is sustained by evidence supporting the inference that the dose administered was effective to. produce the injury complained of because not sufficiently diluted, and only because of that circumstance, without evidence that the mixture was compounded of other ingredients than those ordered.

2. Whether in such a case a permanent physical weakness manifesting itself in incontinence of urine is an element of damage, depends upon whether there is evidence warranting an inference that the shock produced by the medicine was the sufficient and proximate cause of such a weakness; and where several medical experts on the part of the plaintiff testify that this was in itself sufficient to cause the injury and that "such a nervous shock is entirely competent to produce incontinence of urine under the conditions presented," this question is for the jury.

MR. JUSTICE MOSCHZISKER dissents.

Argued Jan. 19, 1911.   Appeal, No. 194, Jan. T., 1910, by defendants, from judgment of C. P. No. 2, Phila. Co., March T., 1905, No. 3,365, on verdict for plaintiffs in case of William C. Butterfield and Lenore. C. Butterfield, his wife, v. Nathan Snellenburg et al., copartners, trading as N. Snellenburg & Company.   Before FELL, C. J., MESTREZAT, POTTER, STEWART and MOSCHZISKER, JJ.· Affirmed.

Trespass for personal injuries.   Before WILTBANK, J.

The facts appear in the opinion of the Supreme Court.

At the trial the following point of charge was presented in behalf of the defendants, which the court refused:

[1. There is no evidence in the case from which the jury would be justified in finding that the mixture furnished by defendants to Mrs. Butterfield, one of the plaintiffs, on August 18, 1904, contained anything more than aromatic spirits of ammonia, essence of peppermint and water, and as the averments of negligence in the plaintiff's statement of claim have not therefore been sustained, the jury should render a verdict for defendants.]

Verdict of $2,000 for the husband and $3,000 for the wife, and judgment thereon.   Defendants appealed.

*F. B. Bracken* of *Loughlin & Bracken*, for appellants.— Failure of a druggist to properly dilute a nonpoisonous substance, is obviously negligence different in kind and degree from the administering of a harmless mixture ordered by a customer: McLean v. Schoenhut Co., 225 Pa. 100.

The permanent weakness complained of was not reasonably to be apprehended as a result of a dose of aromatic spirits of ammonia, however undiluted: Chittick v. Transit Co., 224 Pa. 13; Blasband v. Phila. Rapid Transit Co., 42 Pa. Superior Ct. 325; Houston v. Traphagen, 47 N. J. Law, 23; Weber v. Third Avenue R. R. Co., 12 N. Y. App. Div. 512 (42 N. Y. Supp. 789).

*Francis Rawle*, with him *Guilliaem Aertsen, Jr.*, and *William D. Grimes*, for appellees.

Opinion by Mr. Justice Stewart, March 20, 1911.

The ground on which recovery was sought was that defendants, through their agent or clerk in charge of the drug department in their general store, instead of furnishing the plaintiff for immediate use a proper and harmless dose of aromatic spirits of ammonia, for which she had applied, "negligently prepared and compounded a dangerous, poisonous, corrosive and burning liquid mixture," which the said servant of the defendants then and there gave the said Lenore C. Butterfield to be drunk by her.

It is complained, "that the plaintiff then and there, in ignorance of the said dangerous, poisonous, corrosive and burning mixture, and believing the same to be a harmless dose of aromatic spirits of ammonia, so requested by her as aforesaid, drank the same and became immediately poisoned, and her mouth and throat and other internal digestive organs became burned and inflamed, and that she was immediately shocked both mentally and physically by reason thereof," etc. There was no direct evidence that the mixture administered plaintiff was compounded of other ingredients than those she had ordered. The intense suffering that immediately followed might have warranted an inference that some mistake had been made in the drug, had it been made to appear that such a moderate dose of aromatic spirits of ammonia would produce no harmful effects; but just the contrary was shown. Dr. Hobart A. Hare, an expert witness called by plaintiff, testified that each particular discomfort which the plaintiff testified followed upon her taking the mixture administered could be produced by the dose of aromatic spirits of ammonia, if the dose was not sufficiently diluted. This necessarily resolved the plaintiff's case into a claim for negligence in not sufficiently diluting the dose of the particular drug she asked for. If in urging such negligence, there was a variance between the allegata and the probata, which put the defendants to the disadvantage of being required to defend against a cause of action not alleged, the defendants' first point should have been affirmed; but this cannot be said. What was set out in the statement of claim was that defendants had negligently prepared and administered to plaintiff a dangerous, poisonous, corrosive and burning mixture. The mixture given the plaintiff, as claimed by the defendants, was composed of aromatic spirits of ammonia, essence of peppermint and water. The witness, Dr. Hare, testified that aromatic spirits of ammonia undiluted, or not sufficiently diluted, is a corrosive and irritant poison; that if so administered it will produce exactly the effects which followed here.

If this be so, then water in such proportion as would render the mixture harmless was a very essential ingredient, as otherwise the mixture would be both dangerous, poisonous and corrosive, and that would bring the claim strictly within the cause of action alleged in the statement. That something was wrong about the dose administered is not to be doubted in view of the violent suffering on the part of the plaintiff that immediately followed upon her taking it. The testimony on part of plaintiff supports the inference that it was effective to produce the injury complained of because not sufficiently diluted, and only because of that circumstance. Certainly this gave rise to a presumption of negligence on the part of the clerk who prepared and administered the dose; or, speaking more correctly, it was a circumstance amounting to evidence from which the jury would be warranted in inferring such negligence.

The plaintiff was allowed to recover compensation for a permanent physical weakness manifesting itself in incontinence of urine, which it is claimed resulted directly from the shock produced by the strangulation and suffering that followed the taking of the dose administered by defendants' clerk. That plaintiff is so affected now was not in dispute; nor was her statement that she was not so affected before. According to her own testimony, this ailment resulted immediately and has continued. Whether it was an element of damage to be considered in the case depended on whether there was evidence in the case warranting an inference that the shock produced by the medicine was the sufficient and proximate cause. Several medical experts on part of plaintiff testified that it was in itself sufficient to produce the injury. If sufficient, the circumstances as testified to show clearly enough that it was the proximate cause. Dr. Hare, the witness above referred to, expressed himself on the subject as follows, in answer to a hypothetical case embracing only such facts as were testified to by the plaintiff herself: "My answer to that question would be that it would depend

largely upon the degree of shock, the state of the woman's nervous system, and the degree of relaxation which was present in her genito-urinary organs.   It would not produce it in every case.   It would produce it in some cases. In other words, if the word 'would' is meant to imply that any woman who was subject to the accident already noted in Snellenburg's store would suffer from incontinence of urine after such an accident, I cannot make that sweeping statement.   If I may express it by saying that it was entirely competent, such a nervous shock is entirely competent to be followed by incontinence of urine, I can answer positively, yes, it is entirely competent to produce incontinence of urine under the conditions presented."   On cross-examination he was asked these questions: "Q. Then also it is true that if she got this fright or shock from a mixture of aromatic spirits of ammonia and essence of peppermint, that that might have produced it, as I understand?   A. Yes, sir, that was the agent that produced the shock.   Q. In other words, that drug, according to your judgment, would be sufficient to produce it if it were pungent?   A. Improperly diluted.   Q. Improperly diluted it would have caused that shock?   A. In other words, if the drug was given in such a concentrated form as to produce the symptoms which she told me she had suffered from, and which have been testified to here, that would have produced great nervous shock, and that great nervous shock might have caused this difficulty in controlling the urine.   Q. It is simply because she said that this followed the accident that you conclude the accident might have produced it?   A. That is right. Q. That there was a probability that it would have produced it?   A. Yes, sir.   Q. Therefore, as I gather, your opinion is that the shock might have produced some nervous condition of which the condition of incontinence is a manifestation?   A. Precisely."   Two of the medical witnesses called by plaintiff concurred in the view expressed by Dr. Hare.   It would have been impossible in view of this direct and positive testimony to exclude

this feature of the case from the consideration of the jury. Two medical experts called by defendants expressed a contrary view, and were equally decided that this particular injury could not have been produced by shock. It was a fair question for discussion before the jury as to which of these opposing views was the better supported and which should prevail; and a proper consideration in that connection would be what is so urged upon our attention here, the fact that plaintiff's witnesses, if it be a fact, failed, upon being inquired of, to support their views by any accepted medical authority. But that is not a matter of any concern of ours. A review of this medical testimony, with a view to determine which had the better side of the controversy, would here be wholly out of place. The question was one exclusively for the jury, and in what we have said we have sufficiently answered the several assignments of error.

They are overruled, and the judgment is affirmed.

MR. JUSTICE MOSCHZISKER, dissents.