## DiBelardino, Appellant, v. Lemmon Pharmacal Co.

Argued January 13, 1965. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Thomas A. Reap, Jr.,* with him *Maxwell P. Gorson,* for appellant.

*Frederick E. Smith,* with him *George V. Strong, Jr., John H. Potts,* and *Ross, Smith & Renninger,* and *Strong, Barnett and Grasberger,* for appellee.

*George P. Williams, III,* with him *William M. Power, Bernard G. Segal,* and *Schnader, Harrison, Segal & Lewis,* for appellee.

OPINION BY MR. JUSTICE JONES, March 16, 1965:

May a widow, as administratrix of her deceased husband's estate, institute an action for wrongful death *in assumpsit* based upon an alleged breach of an implied warranty of fitness for use? Such is the issue on this appeal.

On or about August 29, 1960, Lemmon Pharmacal Company (Drug Company), sold and delivered to Dr. John Sanson "two 5 cc. vials of 'Chyzyme Aqueous', thereby warranting and representing that said drug was safe and fit for use as an injection into human beings generally". On or about February 7, 1961, Vincent DiBelardino (decedent), purchased an injection of "Chyzyme Aqueous" from Dr. Sanson who injected the drug into decedent's body. Allegedly, the decedent died on the same day as a result of the injection of the drug.[1]

Alleging that the drug injected into decedent's body was not fit for use in that it contained harmful and dangerous ingredients in breach of an implied warranty of fitness for use, decedent's administratrix instituted an assumpsit action in the Court of Common Pleas of Bucks County against the Drug Company. The complaint contained two counts: the first count was based

---

[1] These averments in the complaint, being well pleaded, must be taken as true for the purpose of this appeal.

upon the so-called "Wrongful Death" statute,[2] and the second count was based upon the so-called "Survival" statute.[3] The Drug Company filed preliminary objections which raised three issues: (a) that an action of assumpsit did not lie under the "Wrongful Death" statute, supra; (b) that an action of assumpsit did not lie under the "Survival" statute, supra; (c) that no cause of action had been pleaded since there was no averment of any privity of contract between the decedent and the Drug Company. The court below upheld the preliminary objection on the ground that an action of assumpsit did not lie under the "Wrongful Death" statute and dismissed the other preliminary objections. From the order sustaining the preliminary objection this appeal has been taken.

Although the precise issue herein presented is of first impression in this Court,[4] on numerous occasions the language of the "Wrongful Death" statute has been construed by this Court.

At common law there was no right of action for damages for negligence resulting in death and no right in any one to recover damages for the death of another: *Howard v. Bell Telephone Co.*, 306 Pa. 518, 160 A. 613; *Potter Title & Trust Co. v. Petcoff,* 122 Pa. Superior Ct. 540, 186 A. 320. "The purpose of the legislation [Acts of 1851 and 1855, supra][5] was to provide for the recovery of compensation for loss for which the

---

[2] Acts of April 15, 1851, P. L. 669, §19, 12 P.S. §1601 and of April 26, 1855, P. L. 309, §1, as amended, 12 P.S. §1602.

[3] Act of April 18, 1949, P. L. 512, §603, 20 P.S. §320.603.

[4] Two lower courts, presented with this issue, have reached diametrically opposite conclusions: *Simone v. John J. Felin & Co. No. 2*, 35 Pa. D. & C. 687 and *Berkebile v. Brantly Helicopter Corporation*, 150 Leg. Intell. No. 116, pp. 890-1 (June 1964). See also: 11 Standard Pennsylvania Practice (revised), §11, p. 15.

[5] The Act of 1855 designates the persons entitled to exercise the right conferred under the 1851 statute: *McCafferty v. Pennsylvania R. R. Co.*, 193 Pa. 339, 44 A. 435

common law furnished no redress": *Minkin v. Minkin,* 336 Pa. 49, 51, 7 A. 2d 461.

The language of the Act of 1851,[6] supra,—which created this new cause of action—, is of vital importance in determining the present issue. Section 19 provides: "Whenever death shall be occasioned by *unlawful violence or negligence,* and no suit for damages be brought by the party injured during his or her life", then the widow, or, in the absence of such widow, the personal representative may maintain an action for such damages. (Emphasis supplied).

Interpreting this statute, our Court has said: "What, in such cases, is the cause of action for which [the 1851 statute] authorizes the suit to be brought? Is it the death of the party, or is it the tort or wrongful act which results in his death? . . . We think it clear that the cause of action contemplated by the statute is the tort which produces death and not the death caused by the tort. It is true that the action will not lie unless death follows the wrongful act which occasions it, but death is not the tort but simply its consequence or result. The tort or wrongful act which our statute declares actionable is 'unlawful violence or negligence' causing or resulting in death. It is the tortious act or negligence of the wrongdoer, and not its consequence, that is the basis or ground of action which the statute authorizes to be brought": *Centofanti v. Pennsylvania R. R. Co.,* 244 Pa. 255, 261, 262, 90 A. 558.[7]

---

[6] The title sets forth seven purposes as diverse in nature as can be imagined.

[7] To the same effect: *Birch v. Pittsburg, C. C. & St. L. Railway Co.,* 165 Pa. 339, 30 A. 826; *Howard v. Bell Telephone Co.,* supra, p. 522; *Staggers v. Dunn-Mar Oil & Gas Co.,* 312 Pa. 269, 272, 273, 167 A. 785 ("If there was no negligence there would be no liability on anyone, . . . .") ; *Kaczorowski v. Kalkosinski,* 321 Pa. 438, 440, 184 A. 663; *Potter Title & Trust Co. v. Petcoff,* supra; *Yania v. Bigan,* 397 Pa. 316, 319, 155 A. 2d 343.

In *Gardiner v. Philadelphia Gas Works,* 413 Pa. 415, 419, 197 A. 2d 612, we have recently said: "In this Commonwealth we have always recognized that a personal injury claim based upon a breach of warranty is a distinct claim from a personal injury claim based on negligence: [citing authorities]." However, in *Henderson v. National Drug Co.,* 343 Pa. 601, 610, 611, 23 A. 2d 743, disposing of a contention that the drug company would be liable, even if not negligent, if the drug was not safe on the theory of a breach of warranty, this Court held that, unless the action is based upon an express warranty, an action against a drug company must be ex delicto and not ex contractu, the action being based upon a breach of duty imposed by law. Under *Henderson,* regardless of the "Wrong-Death" statute, the instant appellant, relying on a breach of implied warranty, would be restricted to an action of trespass rather than an action of assumpsit.[8]

Regardless, however, of the holding in *Henderson,* our examination of the language employed in the "Wrongful Death" statute, viewed in the light of our case law, leads us to the conclusion that the statutory language restricts the right of action therein provided to an action in tort and that an action of assumpsit is inappropriate.[9] The language of Section 19, "death . . .

---

[8] It is to be noted that in cases involving the sale of drugs, trespass, rather than assumpsit, has been chosen as the appropriate action: *Butterfield v. Snellenburg,* 231 Pa. 88, 79 A. 980; *Tremaine v. H. K. Mulford Co.,* 317 Pa. 97, 176 A. 212; *Henderson,* supra; *McIlvaine v. Lutz,* 57 Pa. Superior Ct. 527.

[9] Courts in other jurisdictions have construed language in "wrongful death" statutes, similar to the language in our statute, as limiting the right of action to a tort or ex delicto action: *Bloss v. Dr. C. R. Woodson Sanitarium Co.,* 319 Mo. 1061, 5 S. W. 2d 367; *Sterling Aluminium Products, Inc. v. Shell Oil Co.,* 140 F. 2d 801 (8th Cir. 1944); *Howson v. Foster Beef Co.,* 87 N.H. 200, 177 A. 656; *Wadleigh v. Howson,* 88 N.H. 365, 189 A. 865; *Burkhardt v. Armour & Co.,* 115 Conn. 249, 161 A. 385; *Dice's Admr. v. Zweigart's Admr.,* 161 Ky. 646, 171 S.W. 195; *Hasson Grocery Co. v. Cook,* 196

occasioned by unlawful violence or negligence", would have to be unduly strained and extended to encompass breaches of warranty for which assumpsit would lie. In our view, the legislature intended to create a right of action where death has resulted from a tortious act and that damages arising therefrom are recoverable *only* in an action of trespass.[10]

We are fully aware that the 1851 statute, supra, is remedial in nature and thus subject to a liberal construction. However, that does not mean that we must, by construction, extend such statute to include a right of action so obviously not within the legislative intent as revealed by the statutory language. The cause of action under the statute rests upon "unlawful violence or negligence"; by the employment of such terms, the legislature intended the right of action under the statute to be redressed in a tort and not an assumpsit action.[11]

Order affirmed.

Miss. 452, 17 So. 2d 791; *Whiteley v. Webb's City, Inc.,* Fla. 1951, 55 So. 2d 730 (legislature later changed the statute); *Apitz v. Dames,* 205 Or. 242, 287 P. 2d 585; *Mann v. Henderson,* 261 N.C. 338, 134 S.E. 2d 626; *Kratochvil v. City of Grayling,* 367 Mich. 682, 117 N.W. 2d 164; *Goelz v. Wadley,* (Civ. App. Texas), 350 S.W. 2d 573; *Barley's Admx. v. Clover Splint Coal Co.,* 286 Ky. 218, 150 S.W. 2d 670; *Revel v. Butler,* 238 Ill. App. 4, aff'd 322 Ill. 337, 153 N.E. 682. *Contra* to these holdings are: *Greco v. S. S. Kresge Co.,* 277 N.Y. 26, 12 N.E. 2d 557; *Keiper v. Anderson,* 138 Minn. 392, 165 N.W. 237; *Latimer v. Sears Roebuck & Co.,* 285 F. 2d 152 (5th Cir., 1960); *State of Maryland v. Weyerhaeuser S. S. Co.,* 176 F. Supp. 664 (D.C.D. Md. 1959); *Skovgaard v. The M/V Tungus,* 252 F. 2d 14 (3rd Cir. 1957). The statutes construed in these cases, however, were dissimilar in language to our statute. On the subject generally, see: 80 A.L.R. 880; 115 A.L.R. 1026; 86 A.L.R. 2d 316; 25 C.J.S., Death, §23, p. 1088.

[10] Recently, two Federal courts, presented with this same issue, in construing our 1851 statute, have reached the same conclusion: *Sacks v. Creasy,* 211 F. Supp. 859 (E.D. Pa. 1962); *Frankel v. Styer,* 201 F. Supp. 726 (E.D. Pa. 1962).

[11] The *Berkebile* decision, on which appellant heavily relies, is not persuasive.

DISSENTING OPINION BY MR. JUSTICE ROBERTS:

I respectfully dissent because I believe that the majority takes an unduly restricted view of our Wrongful Death Statute[1] when it precludes this suit for breach of warranty. Admittedly, the language of our statute is somewhat different from that construed in other states where the question has arisen[2] and the case is not entirely free from doubt. But it is not at all an over extension to interpret the phrase "unlawful violence or negligence" as encompassing a death caused by an unsafe drug.[3] In every important sense, the death seems wrongfully caused. Cf. *Greco v. S. S. Kresge Co.*, 277 N.Y. 26, 34, 12 N.E. 2d 557, 561 (1938).

This is all the more true because, as the majority notes, the statute is remedial in nature and therefore should be construed liberally. The remedial purpose is defeated by the construction accorded in this case.[4]

---

[1] Act of April 15, 1851, P. L. 669, §19, 12 P.S. §1601.

[2] In addition to the cases cited in note 9 of the majority opinion, see those cited in 2 Frumer & Friedman, Products Liability §42 (1964) ; Prosser, Torts 652 (3d ed. 1964) ; 2 Harper & James, Torts 1584 (1956).

In England, which was the original source of our Wrongful Death Statute, the courts have sustained claims for wrongful death when based on breach of warranty. See, e.g., *Jackson v. Watson & Sons* [1909] 2 K.B. 193.

[3] It is interesting to note that the Act of April 26, 1855, P. L. 309, §1, as amended, 12 P.S. §1602 (which designates the persons who are entitled to utilize the rights conferred by the Act of 1851), uses the terms "persons entitled to recover damages for *any injuries* causing death . . . ."

[4] In *Greco v. S. S. Kresge Co.*, 277 N.Y. 26, 34, 35, 12 N.E. 2d 557, 561-62 (1938), it was said: "Violation of a duty owing to another is a wrongful act; breach of a contract involving violation of duty may be likewise a wrongful act. . . . Though the action may be brought solely for the breach of the implied warranty, the breach is a wrongful act, a default, and, in its essential nature, a tort. . . . The purchaser could recover, if living, because of the injury she received through the 'wrongful act' or 'default' of the seller based on the breach of the implied warranty that the food

Certainly the intention of the Legislature was broad enough so that we may reasonably construe the statute as including warranty actions for wrongful death. In today's setting, we should allot to the statutory language, chosen 100 years ago, a meaning which will fully implement its intended effect. That purpose is surely not accomplished by the majority's interpretation, even though the language leaves ample room to effectuate the statute's purpose. To make the scope of the statute depend on constricted concepts exalts form over substance[5] and fails to grant judicial fulfillment to legislative intention.

Very pertinently, Justice CARDOZO has written: "Death statutes have their roots in dissatisfaction with . . . archaisms of the law . . . . It would be a misfortune if a narrow or grudging process of construction were to exemplify and perpetuate the very evils to be remedied. There are times when uncertain words are to be wrought into consistency and unity with a legislative policy which is itself a source of law, a new generative impulse transmitted to the legal system. 'The Legislature has the power to decide what the policy of the law shall be, and if it has intimated its will, however indirectly, that will should be recognized and obeyed.' Its intimation is clear enough in the statutes now before us that their effects should not be stifled, without the warrant of clear necessity, by the perpetuation of a policy which now has had its day." (Footnotes omitted.) *Van Beeck v.*

---

was fit for human consumption. . . . Under the common law, a person injured through a breach of duty imposed upon another, might, in his or her lifetime, recover for such injury, but death put an end to liability of the person responsible for such breach. The statute was enacted to remedy partially that evil, not to perpetuate it by leaving the statute open to narrow construction."

[5] We should recognize, at least, that actions for breach of warranty have a somewhat dual identity and partake of both tort and contract.

588

*Sabine Towing Co.,* 300 U.S. 342, 350-51, 57 S. Ct. 452, 456 (1937).

I am also of the belief that the privity argument which is advanced by appellee warrants a swift and final burial.[6]

Mr. Justice MUSMANNO joins in this dissenting opinion.

---

[6] The majority, of course, does not reach the question and, accordingly, does not either endorse a requirement of privity here or express any view on the issue.