Charles M. ALBRIGHT, Administrator of
the Estate of Charles Albright,
Deceased, Plaintiff,

v.

R. J. REYNOLDS TOBACCO COMPA-
NY, a corporation, Defendant.

R. J. REYNOLDS TOBACCO COMPA-
NY, a corporation, Plaintiff,

v.

Charles M. ALBRIGHT, Administrator of
the Estate of Charles Albright,
Deceased, Defendant.

Charles M. ALBRIGHT, Administrator of
the Estate of Charles Albright,
Deceased, Plaintiff,

v.

R. J. REYNOLDS TOBACCO COMPA-
NY, a corporation, and Gerald J.
Weber, Defendants.

Civ. A. Nos. 65–1155, 77–382 and 77–427.

United States District Court,
W. D. Pennsylvania.

Jan. 22, 1979.

Kenneth W. Behrend, Mark B. Aronson, Behrend & Aronson, Pittsburgh, Pa., for Charles M. Albright.

Harold R. Schmidt, Raymond G. Hasley, John R. Riordan, Jr., Rose, Schmidt & Dixon, Pittsburgh, Pa., for R. J. Reynolds Tobacco Co.

Henry Barr, Asst. U. S. Atty., Pittsburgh, Pa., for defendant Gerald J. Weber.

OPINION

COHILL, District Judge.

A review of the history of these related cases may provide a clue as to why the State and Federal court systems are so submerged in a morass of vexatious, over-litigated and sometimes frivolous claims that those cases which deserve the attention of the courts are often short-changed in terms of judicial time and so delayed that responsive and effective justice may be denied.

*Background*

On October 27, 1965, Charles Albright, ("Albright, Sr.") filed Civil Action No. 65–1155 against the Reynolds Tobacco Company ("Reynolds") in this court, claiming that he had sustained damages from smoking Camel cigarettes, a product manufactured by Reynolds. Albright, Sr. died shortly thereafter on November 13, 1965, but the case was continued by his Administratrix, Mary Albright, his widow. After her death on November 17, 1973, their son, Charles M. Albright ("Albright"), became Administrator of the estate. That case will hereinafter be referred to as the "Original Federal Case."

It was before this court for seven years, during which time five amended complaints were filed; there were many hearings and conferences and extensive discovery. Judge (now Chief Judge) Gerald J. Weber ultimately granted Reynold's Motion to Dis-

miss on October 23, 1972. *Albright v. R. J. Reynolds Tobacco Co.*, 350 F.Supp. 341 (W.D.Pa.1972). His decision was affirmed with modifications at 485 F.2d 678 (3d Cir. 1973), *cert. denied*, 416 U.S. 951, 94 S.Ct. 1961, 40 L.Ed.2d 301 (1974).

In August, 1965, Albright, Sr., had also instituted in the Court of Common Pleas of Allegheny County, Pennsylvania (the "State Court") two other actions against Reynolds: Civil Case No. 2190 October Term, 1965, which was an action in assumpsit; Civil Case No. 2191 October Term, 1965, which was an action in trespass. Each of these actions was instituted by the filing of a praecipe for issuance of a writ of summons.[1] These writs were never served on Reynolds. They were reissued by Mary Albright on May 22, 1967 and again not served on Reynolds.

On May 22, 1974 the praecipes were again issued, just 37 days after the U. S. Supreme Court had denied *certiorari* in the Original Federal Case, but long after the statute of limitations had run and almost nine years after the death of Albright, Sr. This time the writs were served on Reynolds. Each writ stated on its face that the amount in controversy exceeded $10,000 exclusive of interest and costs.

On June 20, 1974, Reynolds caused them to be removed to this court pursuant to 28 U.S.C. § 1441(a). These actions (the "Removed Cases") were docketed at Civil Action Nos. 74–607 and 74–608, assigned to Judge Weber, and later consolidated. Removal of the two cases was based upon multiple grounds, including diversity of citizenship and the amount in controversy alleged by plaintiff to be in excess of $10,000. On June 24, 1974, four days *after* the removal of those cases to this court, Albright filed complaints in the State Court. Contrary to what had been stated in the writs, each complaint claimed damages in excess of $3,000 *but less than* $10,000, and Albright then filed a motion in this Court to remand the Removed Cases to the State Court. Al-

1. In Pennsylvania an action may be commenced by filing with the prothonotary (clerk of courts) either a complaint or a *praecipe* for a writ of summons. Pa.R.Civ.P. 1007.

bright admitted that they had been properly removed by Reynolds, but claimed that they should be remanded because the amount of claimed damage was now under $10,000. Albright's motion to remand was denied by Judge Weber on August 6, 1974. Prior to that, on July 3, 1974, Reynolds had moved for summary judgment in the Removed Cases. Before Judge Weber had ruled upon Reynolds' motions, and while the Removed Cases were still pending before this Court, Albright filed an affidavit of bias on September 27, 1974, seeking to have Judge Weber recuse himself. Judge Weber declined to recuse himself. Albright then filed a petition with the United States Court of Appeals for the Third Circuit for a writ of *mandamus* to cause Judge Weber to be removed. This was denied on October 31, 1974, and a similar petition was denied by the United States Supreme Court on January 27, 1975.

On March 6, 1975, Judge Weber entered summary judgment in favor of Reynolds and against Albright in the Removed Cases on the grounds that Albright's claims were barred by the applicable statutes of limitations as a consequence of his failure to timely reissue the writs of summons.

By Order of this Court dated October 31, 1972, Albright had been permitted to pursue the appeal in the Original Federal Case *in forma pauperis.* On March 25, 1975, Albright again filed a motion for leave to appeal the decision in the Removed Cases *in forma pauperis.* This time, however, on March 26, 1975, Albright's motion was denied by this Court. Albright then filed a similar motion with the United States Court of Appeals for the Third Circuit, which denied the same on April 29, 1975. The Court of Appeals' decision was without prejudice to the right of Albright to renew his motion promptly, supported by sworn statements stating in detail the assets (with valuations) and liabilities of the Estate, as well as the assets, liabilities, income and expenses of the "real beneficiaries" of the Estate. No such statements were ever filed, and Albright prosecuted the appeal in the usual fashion.

On February 13, 1976, the judgment of this Court in favor of Reynolds in the Removed Cases was affirmed at 531 F.2d 132 (3d Cir. 1976), *cert. denied,* 426 U.S. 907, 96 S.Ct. 2229, 48 L.Ed.2d 832 (1976). Albright had not appealed this Court's order dismissing the Removed Cases on their merits, but only contested the failure of this court to remand the cases to State Court. The United States Supreme Court denied Albright's petition for a writ of *certiorari* on June 1, 1976.

Shortly after the denial of *certiorari* by the United States Supreme Court in the Removed Cases, Albright apparently embarked upon an attempt to relitigate in the State Court this Court's judgments in the Original Federal Case and in the Removed Cases. On September 22, 1976, Albright filed a praecipe to reissue a writ in trespass in another action which had been instituted in the State Court ("Second State Court Action") on September 8, 1966 at No. 2876, October Term 1966. The original writ was not served on Reynolds and had not been reissued in the ten year period prior to September 22, 1976. Albright also filed a complaint against Reynolds at this time, which complaint alleged the same claims which formed the basis for the Original Federal Court case and the Removed Cases. Albright limited this claim for damages in his complaint to an amount in excess of $3,000 but less than $10,000.

On October 18, 1976, Reynolds filed preliminary objections to Albright's complaint in the Second State Court Action, seeking to have that complaint dismissed with prejudice. On March 8, 1977, the State Court, sitting *en banc,* sustained Reynolds' preliminary objections in part and dismissed Albright's complaint. (*See* Opinion attached to Reynolds' complaint at No. 77–382). On April 7, 1977, Albright filed a notice of appeal to the Superior Court of Pennsylvania from the aforesaid March 8, 1977 order, which appeal has been stayed, at Albright's request and without prejudice to Reynolds, by Order of the Superior Court dated May 31, 1977.

On February 24, 1977, after oral argument on Reynolds' preliminary objections in the Second State Court Action before the State Court *en banc*, but before any ruling on those preliminary objections had been announced by the Court, Albright commenced yet another action against Reynolds in trespass on February 24, 1977 in the State Court at No. GD77–03938 ("Third State Court Action"). Again, the complaint in the Third State Court Action alleges the same claims which formed the basis of the Original Federal Court Case and the Removed Cases, and again limits Albright's demand for damages to an amount in excess of $3,000 but less than $10,000. The Third State Court Action is presently still pending, although temporarily stayed by stipulation of both parties.

In addition to the praecipe for issuance of a writ of summons in trespass filed by Mary Albright on September 8, 1966, the Second State Court Action, Mary Albright, on September 22, 1966, filed a praecipe for issuance of a writ of summons in assumpsit at No. 3448 October Term 1966 in the State Court ("Fourth State Court Action"). The writ in assumpsit was issued on September 23, 1966, but was never served on Reynolds and consequently expired. No complaint has ever been filed, and there has been no activity of record in the Fourth State Court Action since that time.

On April 4, 1977, Reynolds initiated in this Court Civil Action No. 77–382, styled *R. J. Reynolds Tobacco Company v. Charles M. Albright, Administrator of the Estate of Charles Albright, Deceased* (the "Reynolds Action"), the prayer for relief being a preliminary injunction enjoining Albright (i) from prosecuting the Second, Third and Fourth State Court Actions and (ii) from instituting any future litigation against Reynolds relating to the facts which formed the basis for the prior federal court judgments or (iii) taking any other action "designed to attack the prior judgments of this Court." The Reynolds Action was assigned to Judge Weber as being related to the Original Federal Court Case and the Removed Actions. On April 8, 1977, Reynolds filed a Motion For Hearing on its Motion for Preliminary Injunction (also filed the same day) and a Motion For Leave To Take Deposition of Plaintiff (this caption obviously should have read, "Motion for Leave To Take Deposition of Defendant"), both of which motions are usually granted as a matter of course by this court. The motion for hearing and motion for leave to depose Albright were granted by Judge Weber on April 11, 1977.

Eleven days after Reynolds instituted its action, on April 15, 1977, Albright filed suit at Civil Action No. 77–427 in this Court against Reynolds and Judge Weber.

In the Reynolds Action, Albright filed an objection to his giving his deposition and a motion for protective order; a motion and affidavit of bias seeking to have Judge Weber recuse himself; an answer to Reynolds' motion for preliminary injunction; a motion to dismiss Reynolds' complaint; and an answer to Reynolds' motion for leave to depose Albright. In the suit at No. 77–427, in addition to his complaint, Albright filed objections to his giving a deposition and a motion for protective order and a motion to strike Judge Weber's motion to dismiss.

In addition to the aforesaid state and federal court litigation, Albright launched an attack on the final judgment of this Court in the Original Federal Court Case. On May 16, 1977, Albright filed the following documents in connection with 65–1155, the Original Federal Case:

1. A "Motion to Grant Extension Of Time To Allow The Filing Of A Petition For Rehearing On Petition For a Writ of Certiorari" in the United States Supreme Court in the Original Federal Court Case. This application was rejected by the Clerk of Court as out-of-time.

2. A "Motion For Order Permitting Petition For Rehearing After Expiration Of Filing Period As Set By Rule 40 Of The Rules of Appellate Procedure" in the United States Court of Appeals for the Third Circuit in The Original Federal Court Case. This motion was denied by Order dated May 26, 1977.

3. A "Petition To Allow Writ Of Error Coram Nobis" and "Plaintiff's Affi-

davit That Honorable Gerald J. Weber, The Judge Who Handled The Disposition Of This Civil Action, Has And Had A Personal Bias In Favor of R. J. Reynolds" in this Court in the Original Federal Court Case. As hereinafter set forth, Judge Weber did recuse himself.

4. A "Motion For Stay Of Appellate Proceedings" in the Second State Court Action in the Superior Court of Pennsylvania. This motion was granted by the aforementioned Order of May 31, 1977, without prejudice to Reynolds because of its conditional consent thereto.

In each of the pleadings filed in this Court and listed above, Albright claims that this Court's judgment in the Original Federal Court Case should be re-examined on the basis of Albright's suspicion that Judge Weber acted out of some undisclosed personal bias against Albright in dismissing his complaint. Albright does not identify the exact nature of this supposed bias.

### I.

*Motions and Issues to Be Decided*

The following motions and issues are considered herein:

1. At Civil Action No. 65–1155—Petition to Allow Writ of Error Coram Nobis filed by plaintiff Albright;

2. At Civil Action No. 77–382—Motion to Dismiss filed by defendant Albright;

3. At Civil Action No. 77–427—Motion to Dismiss filed by defendant Chief Judge Weber; Motion to Strike Chief Judge Weber's Motion to Dismiss filed by plaintiff Albright; Motion to Dismiss filed by defendant Reynolds.

4. At Civil Action No. 77–382—Objections to Deposition and Motion for Protective Order filed by defendant Albright.

### II.

*Albright's Petition to Allow Writ of Error Coram Nobis*

As previously indicated, Albright on May 16, 1977, filed a Petition to Allow Writ of Error Coram Nobis in the Original Federal Case. The Petition was one of several papers filed contemporaneously by Albright in the United States Supreme Court, in the United States Court of Appeals for the Third Circuit, in this Court, and in the Superior Court of Pennsylvania. The Supreme Court and the Court of Appeals have declined to consider Albright's requests for relief. At Albright's request, the Superior Court of Pennsylvania has stayed the appeal pending in the Second State Court Action without prejudice to Reynolds because of its conditional assent thereto. Albright, now apparently realizing that writs of error coram nobis have been explicitly abolished by Fed.R.Civ.P. 60(b), requests in his brief in support of his Petition that the Court treat his Petition as a motion under Rule 60(b)(6). Rule 60(b) reads:

"(b) *Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, etc.* On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) *any other reason justifying relief from the operation of the judgment.* The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken. A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation. This rule does

not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, or to grant relief to a defendant not actually personally notified as provided in Title 28, U.S.C. § 1655, or to set aside a judgment for fraud upon the court. Writs of coram nobis, coram vobis, audita querela, and bills of review and bills in the nature of a bill of review, are abolished, and the procedure for obtaining any relief from a judgment shall be by motion as prescribed in these rules or by an independent action." (Emphasis added.)

■ Albright has alleged nothing in his Petition and brief which would bring this case within the scope of any of the bases for relief enumerated in Rule 60(b). Rather, Albright merely cites a list of rulings by Judge Weber, the chief one being Judge Weber's decision to dismiss Albright's complaint in the Original Federal Court Case, adverse to Albright, and asks this Court to conclude that he (Albright) is somehow entitled to relief under Rule 60(b). The fact that Albright has been disappointed by Judge Weber's rulings is not sufficient to warrant relief under Rule 60(b).

A reading of Albright's Petition, as well as his brief in support thereof, requires the Court to guess at the "other reason" of Rule 60(b)(6) which Albright claims justifies relief from the judgment of this Court in the Original Federal Case. Apparently, the reason advanced by Albright as justifying the requested relief is that Judge Weber's decision in the Original Federal Case dismissing Albright's complaint was erroneous and biased, although it was based on the failure of the complaint to meet the jurisdictional amount, and Albright never offered in a pretrial narrative statement evidence legally sufficient to substantiate a claim in excess of the $10,000 minimal amount required for federal diversity jurisdiction. (See paragraph 1 of Albright's Petition.)

Albright's Petition, as well as his charge that Judge Weber's ruling in the Original Federal Case is the result of an alleged bias against Albright, are completely speculative and appear to be an attempt to escape the res judicata and collateral estoppel effects of the decision in the Original Federal Case. Albright has already exercised the opportunity to appeal the correctness of Judge Weber's dismissal of Albright's complaint on the basis of jurisdictional amount, and this decision was affirmed by the Third Circuit, with certiorari denied by the United States Supreme Court. Albright v. R. J. Reynolds Tobacco Co., 350 F.Supp. 341 (W.D.Pa.1972); aff'd with modifications, 485 F.2d 678 (3d Cir. 1973), cert. denied, 416 U.S. 951, 94 S.Ct. 1961, 40 L.Ed.2d 301 (1974).

The Third Circuit has recently commented upon Rule 60(b)(6) in Stradley v. Cortez, 518 F.2d 488, 493 (3d Cir. 1975), where it was noted that relief under the rule must be sought "within a reasonable time." The Court also stated that Rule 60(b)(6) is not intended as a means by which the one-year time limitation of Rule 60(b)(1)–(3) may be circumvented. Stradley further held that Rule 60(b)(6) is available only in cases evidencing extraordinary circumstances, and only when the relief sought is based upon "any other reason" than a reason which would warrant relief under Rule 60(b)(1)–(5).

■ The grounds for relief from the judgment of this Court in the Original Federal Court Case alleged by Albright in his Petition and brief are insufficient to justify this Court to invoke Rule 60(b)(6).

The petition of Albright entitled "Petition to Allow Writ of Error Coram Nobis" will be denied.

### III.

### Albright's Motion to Dismiss Complaint Filed at No. 77–382

The thrust of Reynolds' complaint is twofold: a request for (i) an order restraining Albright from proceeding with actions now pending against Reynolds in the state courts of Pennsylvania; and (ii) an order restraining Albright from instituting any other lawsuits in any state or federal court

arising out of the background of this litigation, and taking any other action designed to attack prior judgments of this Court. In addition, Reynolds' complaint prays for such other further and appropriate relief as the Court may deem appropriate and Reynolds may request.

Albright argues that 28 U.S.C. § 2283 prevents this Court from issuing an injunction restraining Albright from proceeding with the now-pending state court litigation. Section 2283 states: "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."

■ Following a hearing, we will determine if the pending State Court Actions represent a direct threat to the judgments of this Court and should be enjoined. Federal courts are vested with inherent power to protect and effectuate their judgments and to prevent the destruction of these judgments by subsequent proceedings in state court. *Berman v. Denver Tramway Corp.*, 197 F.2d 946 (10th Cir. 1952); *Ward v. Pennsylvania New York Central Transportation Co.*, 456 F.2d 1046 (2d Cir. 1972). It has been held that the exception stated in § 2283 permits a federal court to enjoin an individual from relitigating in state court an adverse prior federal judgment in order to protect and effectuate that judgment. *See International Association of Machinists and Aero. Workers v. Nix*, 512 F.2d 125 (5th Cir. 1975); *Woods Exploration & Pro. Co. v. Aluminum Co. of America*, 438 F.2d 1286, 1311–16 (5th Cir. 1971), *cert. denied*, 404 U.S. 1047, 92 S.Ct. 701, 30 L.Ed.2d 736 (1972); *Donelon v. New Orleans Terminal Company*, 474 F.2d 1108, 1113–14 (5th Cir.), *cert. denied*, 414 U.S. 855, 94 S.Ct. 157, 38 L.Ed.2d 105 (1973). The relitigation exception of Section 2283 has been construed to apply not only when the prior federal judgment is *res judicata* in the second suit, but also when the principle of collateral estoppel would prevent reconsideration of the claim. *Samuel C. Ennis & Co., Inc. v. Woodmar Realty Co.*, 542 F.2d 45 (7th Cir.

1976), *cert. denied*, 429 U.S. 1096, 97 S.Ct. 1112, 51 L.Ed.2d 543 (1977); *International Association of Machinists and Aero. Workers v. Nix, supra.*

Albright argues that this "relitigation exception" is unavailable to Reynolds because the prior judgments of the Court in favor of Reynolds in the Original Federal Court Case and in the Removed Cases involved a separate and distinct cause of action than that involved in the pending state court litigation. Specifically, Albright claims that the Original Federal Case and the Removed Cases were *surviving* actions instituted by Albright, Sr., the decedent, during his lifetime, while the present state court cases are *survival* and *wrongful death* actions instituted by the decedent's successors to recover not only for cancer and bodily injury to decedent but also for decedent's death. Since the State Court actions contain this added element, as well as a claim for several items of damage not claimed in the prior federal litigation, Albright argues that the relitigation exception of Section 2283 is not available to Reynolds and that the Court may not issue an injunction restraining the prosecution of the State Court cases.

■ Albright is in error. Mary Albright, the former Executrix of decedent's Estate, during her lifetime, attempted to allege both wrongful death and survival claims in the first, second and third amended complaints filed in the Original Federal Action. However, after objection by Reynolds, Mary Albright later admitted in a brief filed with the court that this case was intended to be a survival action and that, under the applicable law, there could be no cause and/or causes of action for wrongful death and survival because her decedent had commenced an action in his lifetime for his damages. These claims were stricken by the court in the Original Federal Case. Under Pennsylvania law, a wrongful death action is not separate and distinct from that action which could have been brought by the decedent during his lifetime had he lived. Rather, under Pennsylvania law, only one cause of action arises for an indi-

vidual's injuries, and where that individual brings an action during his lifetime to recover for those injuries, his successors may not bring suit against the alleged tortfeasor even though those injuries result in the death of the individual. The death does not itself create a new cause of action independent of that which arose from the original tort. The applicable principle is set forth in *DiBelardino v. Lemmon Pharm. Co.*, 416 Pa. 580, 208 A.2d 283 (1965):

> "What, in such cases, is the cause of action for which [the wrongful death statute] authorizes the suit to be brought? Is it the death of the party, or is it the tort or wrongful act which results in death? . . . We think it clear that the cause of action contemplated by the statute is the tort which produces death, and not the death caused by the tort. It is true that the action will not lie unless death follows the wrongful act which occasions it; but death is not the tort but simply is a consequence or result. The tort or wrongful act which our statute declares actionable is 'unlawful violence or negligence' causing or resulting in death. It is the tortious act or negligence of the wrongdoer, and not its consequence, that is the basis or ground of action which the statute authorizes to be brought." 416 Pa. at 583, 208 A.2d at 284–85.

*See also Staggers v. Dunn-Mar Oil & Gas Co.*, 312 Pa. 269, 167 A. 785 (1933); *Howard v. Bell Telephone Co.*, 306 Pa. 518, 160 A. 613 (1932); *Centofanti v. Pennsylvania Railroad Co.*, 244 Pa. 255, 90 A. 558 (1914); *Yania v. Bigan*, 397 Pa. 316, 155 A.2d 343 (1959); *Kaczorowski v. Kalkosinski*, 321 Pa. 438, 184 A. 663 (1936).

■ Thus, the fact that Albright, Sr. expired from injuries allegedly caused by smoking Reynolds' product does not create a cause of action in his successors independent from that upon which Albright, Sr. brought suit during his lifetime and which resulted in final judgments favorable to Reynolds. The *res judicata* and collateral estoppel effects of the judgments of this Court in the Original Federal Case and in the Removed Cases are conclusive of Al-

bright's attempts to relitigate this cause of action in state court.

■ Albright argues that the cause of action sued upon in the state court is not identical to that concluded by the prior federal judgments because Albright, Sr. was the plaintiff in the prior federal suits while his successors are plaintiffs in the state proceedings and because the state proceedings seek to recover for elements of damage different from those claimed in the Original Federal Case and in the Removed Actions. Albright is again in error. While the plaintiffs in the federal and state court proceedings against Reynolds are different individuals, these individuals are in privity with the decedent and have standing to sue Reynolds only by reason of their relationship to decedent. The principles of *res judicata* and collateral estoppel are applicable not only where the parties to the second suit are identical to those of the first, but also where they are in privity with those of the first. *Goldstein v. Ahrens*, 379 Pa. 330, 180 A.2d 693 (1954); *Stevenson v. Silverman*, 417 Pa. 187, 208 A.2d 786, *cert. denied*, 382 U.S. 833, 86 S.Ct. 76, 15 L.Ed.2d 76 (1965).

■ Likewise, the fact that the state court proceedings are brought to recover for different items of damage than were sought by Albright, Sr. and his successors in the prior federal proceedings does not preclude the application of the principles of *res judicata* and collateral estoppel, because it is the cause of action sued upon, rather than the remedy sought, which is determinative. *Kiely v. J. A. Cunningham Equipment, Inc.*, 387 Pa. 598, 128 A.2d 759 (1957); *Helmig v. Rockwell Manufacturing Company*, 389 Pa. 21, 131 A.2d 622 (1957); *Spinelli v. Maxwell*, 430 Pa. 478, 243 A.2d 425 (1968). *See also Voci v. Farkas*, 144 F.Supp. 103 (E.D.Pa.1956).

■ Albright has not addressed the second element of injunctive relief requested by Reynolds, *i. e.*, that Albright be enjoined from instituting in the future any other action arising from the background of this litigation, whether in state or federal

court. The facts of this case may indicate the appropriateness of such relief pursuant to the inherent power of the Court. Section 2283 does not prohibit the issuance of such an injunction, since that statute applies only to injunctions against *pending* state court proceedings rather than against those which may be brought in the future or are only threatened. *Walter E. Heller & Co., Inc. v. Cox*, 379 F.Supp. 299, 307 (S.D. N.Y.1974). *See also Dombrowski v. Pfister*, 380 U.S. 479, 484 n.2, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1968).

A federal court has the inherent power and jurisdiction to issue an injunction to effect its prior judgments and protect against future attempts to attack or evade those judgments. The Third Circuit has itself issued such injunctions on several occasions. See *Gambocz v. Yelencsics*, 468 F.2d 837 (3d Cir. 1972); *Silverman v. Constitution Life Insurance Company*, 345 F.2d 177 (3d Cir. 1965). *See also Adams v. American Bar Assoc.*, 400 F.Supp. 219 (E.D. Pa.1975). Other federal courts as well have recognized their ability to enjoin vexatious attempts at relitigation of prior federal court judgments, such as those with which we are confronted in these proceedings. *See Walter E. Heller & Co., Inc. v. Cox, supra* ; *Boruski v. Stewart*, 381 F.Supp. 529 (S.D.N.Y.1974).

Albright's Motion to Dismiss the Complaint at No. 77–382 will be denied.

### IV.

*Chief Judge Gerald J. Weber's Motion to Dismiss at No. 77–427*

In his complaint at No. 77–427, Albright alleges a violation of his decedent's Fifth Amendment rights accomplished by a conspiracy between Judge Weber and Reynolds. The design of this alleged conspiracy was the intimidation of the plaintiff so as to thwart his pursuit of "his believed rights and duty" to sue Reynolds (Plaintiff's Complaint at 4). Plaintiff urges " . . . that damages for the violation of the Constitutional rights of Albright be awarded." (Plaintiff's Complaint at 4).

Since 1872, the United States Supreme Court has consistently held that judges acting in their official capacities cannot be held liable for damages as a result of their actions. In *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 351, 20 L.Ed. 646 (1872), the Court stated:

" . . . [J]udges of Court of Superior or general jurisdiction are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been joined maliciously or corruptly."

In *Pierson v. Ray*, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967), the Supreme Court expanded the *Bradley v. Fisher* doctrine and held that judges acting in their official capacities were even immune from civil rights allegations under 42 U.S.C. § 1983. *Id.* at 554–55, 87 S.Ct. 1213.

This proposition has been recently and strongly reaffirmed in *Stump v. Sparkman*, 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978), where Mr. Justice White, writing for the majority, stated:

"Disagreement with the action taken by the judge, however, does not justify depriving that judge of his immunity. Despite the unfairness to litigants that sometimes results, the doctrine of judicial immunity is thought to be in the best interests of 'the proper administration of justice . . . [for it allows] a judicial officer, in exercising the authority vested in him [to] be free to act upon his own convictions, without apprehension of personal consequences to himself.' *Bradley v. Fisher*, 13 Wall., at 347. The fact that the issue before the judge is a controversial one is all the more reason that he should be able to act without fear of suit. As the Court pointed out in Bradley: 'Controversies involving not merely great pecuniary interests, but the liberty and character of the parties, and consequently exciting the deepest feelings, are being constantly determined in those courts, in which there is great conflict in the evidence and great doubt as to the law which should govern their decision. It is this class of cases which impose upon the

judge the severest labor, and often create in his mind a painful sense of responsibility.' *Id.*, at 348."

The Third Circuit through the late Chief Judge Austin Staley has spoken eloquently on the doctrine. In *Bauers v. Heisel*, 361 F.2d 581 (1966), *cert. denied*, 386 U.S. 1021, 87 S.Ct. 1367, 18 L.Ed.2d 457 (1967), the Court, sitting *en banc*, ruled that the comprehensive Civil Rights Act of 1871, 42 U.S.C. § 1983, did not abrogate the common law doctrine. Judge Staley, for the majority, stated:

"Article 4, § 4 of the United States Constitution provides: 'The United States shall guarantee to every State in this Union a Republican Form of Government * * *.' The framers of the Constitution clearly evinced their belief that a separate and independent judiciary is an indispensable element of a republican form of government. . . . We believe that abrogation of judicial immunity by Congress would destroy the independence of the judiciary in the various States, and consequently deprive them of a republication form of government." *Id.* at 588–89.

The sole limitation placed upon the doctrine of judicial immunity is that actions clearly and definitively beyond the scope of the judge's jurisdiction are not protected. The Supreme Court in *Bradley v. Fisher* declared:

"A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdiction over the subject matter. Where there is clearly jurisdiction over the subject matter, any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible." (80 U.S. at 351).

Applying the *Bradley v. Fisher* test, the Ninth Circuit explained that where a judicial officer does an act in the clear absence of all jurisdiction and knows of the absence of such jurisdiction, his judicial immunity is pierced, but when he merely acts in excess of vested jurisdiction or in an otherwise erroneous manner, the general immunity of a judicial officer remains intact. *Johnson v. MacCoy*, 278 F.2d 37 (9th Cir. 1960). Subsequently, that same Circuit adjudicated a case where a judge's judicial immunity was pierced. In *Gregory v. Thompson*, 500 F.2d 59 (9th Cir. 1974), the Ninth Circuit held that the defendant, a state judge, was not entitled to immunity in a tort action resulting from the judge's personal, physical expulsion of an individual from his courtroom.

"The decision to personally evict someone from a courtroom by the use of physical force is simply not an act of a judicial nature, and is not such as to require insulation in order that the decision be deliberately reached. A judicial act within the meaning of the doctrine may normally be corrected on appeal." *Id.* at 64.

The Supreme Court, in *Pierson v. Ray, supra*, emphasized that ". . . [judicial] immunity applies even when the judge is accused of acting maliciously and corruptly . . . His errors may be corrected on appeal." *Id.* 386 U.S. at 554, 87 S.Ct. at 1218. Hence, the exemption mentioned in *Bradley v. Fisher, supra*, applies to those types of judicial decisions which cannot be corrected on appeal.

■ Neither are judges included in the definitions set out in 28 U.S.C. § 2671 and, *a fortiori*, are exempt from the Federal Tort Claims Act, 28 U.S.C. § 2674. In *Foster v. MacBride*, 521 F.2d 1304 (9th Cir. 1974), the Ninth Circuit ruled that ". . . a federal district judge in trying cases is a member of the independent judiciary and is not under the control of the United States. Therefore, he is not 'an employee of the government . . .'" as is required for liability under the Federal Tort Claims Act. *Id.* at 1305.

■ Applying the doctrine of judicial immunity to the facts at bar, the suit against Judge Weber must be dismissed for failure to state a claim upon which relief can be granted. Any of the errors allegedly made by Judge Weber, if substantiated, could be corrected by an appellate court. As the Court of Appeals noted in *Gregory v.*

*Thompson,* 500 F.2d 59 (9th Cir. 1974): "Judges may invoke the [judicial immunity] doctrine not merely in their defense at trial, but rather as a plea to ban the trial itself." *Id.* at 62.

The suit against Judge Weber will therefore be dismissed.

## V.

*Reynolds' Motion to Dismiss Complaint Filed at No. 77-427*

Reynolds moves to dismiss Albright's complaint on the ground that Albright has failed to state a claim against Reynolds. Albright has claimed damages from Reynolds, alleging that Reynolds, acting in concert with Judge Weber, violated Albright's rights under the Fifth Amendment to the Constitution. Although the complaint does not make it clear, we construe the underlying cause of action against Reynolds to be asserted under 42 U.S.C. § 1985(3).

■ A plaintiff in a civil rights case must plead highly specific facts in support of allegations of the complaint, particularly where a conspiracy on the part of the defendants is claimed. In upholding the dismissal of a § 1985(3) claim, the Third Circuit has written:

".  .  .  With near unanimity, the courts have rejected complaints containing mere conclusory allegations of deprivations of constitutional rights protected under § 1985(3). A conspiracy claim based upon § 1985(3) requires a clear showing of invidious, purposeful and intentional discrimination between classes or individuals."

*Robinson v. McCorkle,* 462 F.2d 111, 113 (3d Cir. 1972), *cert. denied,* 409 U.S. 1042, 93 S.Ct. 529, 34 L.Ed.2d 492 (1973). *See also Esser v. Weller,* 467 F.2d 949 (3d Cir. 1972); *Drusky v. Judges of Supreme Court,* 324 F.Supp. 332 (W.D.Pa.1971); *Smith v. Bucci Detective Agency,* 316 F.Supp. 1284 (W.D. Pa.1970); *Weyandt v. Mason's Stores, Inc.,* 279 F.Supp. 283 (W.D.Pa.1968); *United States ex rel. Hoge v. Bolsinger,* 211 F.Supp. 199 (W.D.Pa.1962), *aff'd per curiam,* 311 F.2d 215 (3d Cir.) *cert. denied* 372 U.S. 931, 83 S.Ct. 878, 9 L.Ed.2d 735 (1963). *Cf. Black and Yates v. Mahogany Association,* 129 F.2d 227, 231–232 (3d Cir. 1941), *cert. denied* 317 U.S. 672, 63 S.Ct. 76, 87 L.Ed. 539 (1942).

■ From a reading of Albright's complaint, it is apparent that Albright has intended to plead his claim against Reynolds with specificity in compliance with the above principle. However, an examination of the complaint reveals that that document is devoid of any facts which would tend to establish that a conspiracy ever existed between Reynolds and Judge Weber. Rather, the only facts Albright raises in support of his charge of conspiracy are a collection of selected rulings made by Judge Weber during the course of this protracted litigation in which Judge Weber decided in favor of Reynolds. The fact that Albright has been disappointed by Judge Weber's rulings is not sufficient to establish a conspiracy.

Albright's complaint will be dismissed for failure to state a claim upon which relief can be granted.

## VI.

*Albright's Objections to Deposition and Motion for Protective Order*

Shortly after Reynolds filed its complaint and Motion for Preliminary Injunction, it filed a notice that it would take Albright's deposition. Albright filed objections to this and a Motion for a Protective Order.

In the meantime Judge Weber recused himself and transferred the case to the undersigned.

In view of the ruling of this court on the various motions heretofore discussed, it is now appropriate for Reynolds to take the deposition of Albright, and Albright's motion for a Protective Order will be denied.

### Summary

Albright's Petition to Allow Writ of Error Coram Nobis at No. 65–1155 and his Motion to Dismiss Motion for Protective Order at No. 77–382 will be denied.

Chief Judge Weber's Motion to Dismiss at No. 77–427 will be granted. Albright's Motion to Strike Chief Judge Weber's Motion to Dismiss at No. 77–427 will be denied.

Reynolds' Motion to Dismiss at No. 77–427 will be granted.

As a result of the Order to be entered, and consistent with this Opinion, the only remaining case between the parties in this court will be Civil Action No. 77–382, the injunctive relief sought by Reynolds against Albright.

An appropriate order will be entered.